Argued and submitted May 22, reversed and remanded with instructions
October 31, 2001

In the Matter of the Adoption of
Anton Michael Ash, a Minor Child.

Colby J. PANTER
and Joanna R. Panter,
*Appellants,*

*v.*

Damien A. ASH,
*Respondent.*

C990043AD; A109746

33 P3d 1028

Jacqueline L. Koch argued the cause for appellants. With her on the brief was Koch & Deering.

No appearance for respondent.

Before Haselton, Presiding Judge, and Wollheim and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Mother and stepfather appeal from an order denying their petition to allow stepfather to adopt mother's son. They contend that the trial court erred in concluding that they failed to prove, by clear and convincing evidence, that the biological father had neglected the child during the year preceding the petition. On *de novo* review, we reverse.

Mother became pregnant in 1996. During her pregnancy, she lived and went to school in McMinnville, Oregon. After mother became pregnant but before child was born, she ended her relationship with father. Father moved to Washington, where he currently lives. Shortly after ending her relationship with father, mother began seeing stepfather. Stepfather was present at child's birth on March 3, 1997, and mother and stepfather were married in August 1997.

Both mother and father had planned on putting child up for adoption. Father, however, changed his mind the day before child was born, and mother ultimately decided that she would keep child. Shortly after the birth, mother filed a petition for custody, visitation, and support. Father admitted that he received those documents but he failed to respond to them. The court awarded mother sole custody of child, subject to reasonable visitation by father. It also ordered father to pay child support and to maintain health and life insurance for child.

Father has had no contact with child since a few days after child's birth. He has had no contact with mother since being served in connection with the custody decision. He has not exercised his visitation rights, voluntarily paid any child support, or corresponded with child in any other fashion. Father's income tax refund was withheld in 1998, and father's wages were garnished beginning in late March 1999 due to his failure to pay child support. Father provided child with medical insurance through his work but never told petitioners that he was doing so.

Stepfather's income as a police officer supports both mother and child. Because stepfather is a police officer, the

family's telephone number and address are unlisted and confidential. Mother, however, maintained her college address and phone number until May 1999. She routinely picked up any mail there. Father's only attempt to contact mother and child occurred when he called mother's parents in 1997 and obtained her address. Other members of father's family have contacted the maternal grandmother about child, but never at father's request.

Mother and stepfather petitioned to permit stepfather to adopt child in March 1999. The petition alleged that father had refused to consent to the adoption. The petition also alleged that father had deserted and neglected child, without just and sufficient cause, for more than one year prior to the filing of the petition. Father filed an objection to the petition, denying the allegations. The matter went to trial in January 2000, and the trial court found that mother and stepfather had failed to meet their burden of proof under ORS 109.324.

On appeal, mother and stepfather assign error to the trial court's determination that they failed to prove, by clear and convincing evidence, that father had neglected child for more than one year prior to the filing of the petition without just and sufficient cause. They argue that, because father had neither contacted nor supported child during that period and because he had no good reason to avoid his obligations, they have satisfied their burden under ORS 109.324.[1]

██  Generally, before an adoption may proceed, the trial court must determine whether the natural parent consents to relinquishing his or her parental rights. *Eder v. West*, 312 Or 244, 260, 821 P2d 400 (1991). No consent is required, however, if the parent has willfully deserted or neglected the child without just and sufficient cause. ORS 109.324.[2] If the

---

[1] Father has not filed a brief on appeal.

[2] ORS 109.324 provides, in relevant part:

"If either parent is believed to have willfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation * * * to show cause why the adoption of the child should not be decreed. * * * [I]f the court finds that such parent has willfully deserted or neglected without just or sufficient cause * * * the consent of such parent at the

court finds that the parent has done so, the court must then decide whether adoption is in the best interests of the child. *Eder*, 312 Or at 261.

■ ■    ORS 109.324 does not define willful neglect. The Supreme Court, however, has explained that the relevant question is:

> "During the year preceding the filing of the petition for adoption, did the nonconsenting parent willfully fail to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship?"

*Eder,* 312 Or at 266. Payments of money, gifts, visits, telephone calls, cards, or letters and other expressions of concern all bear on the determination. *Id.* at 267-70; *Pizano-Varela v. Gomez*, 103 Or App 629, 632, 798 P2d 724 (1990).

■ ■    In this case, father has not seen child since several days after child's birth.[3] He has never exercised his visitation rights under the custody judgment, nor had he attempted to contact child by letter, card, or telephone in the year preceding the petition. Although father purchased gifts when child was born, he never sent them. Father has not voluntarily paid any of the child support that he owes even though he has worked since child's birth.[4] The only two payments for child's support came from father's tax refund check and garnished wages that were withheld and applied to past due child support obligations. The sole voluntary act father took with regard to child within the past year was obtaining health insurance for him through father's insurance plan at work. However, because father never told mother what he had done, stepfather also insured child through his work.

---

discretion of the court is not required and * * * the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has willfully deserted or neglected without just and sufficient cause * * *, the court may disregard incidental visitations, communications and contributions."

[3] We give deference to the trial court's credibility findings and state the facts consistently with those findings. *State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 680-81, 813 P2d 58 (1991).

[4] Father began working full time in late 1998, earning approximately $12.50 an hour. Before that, he had been working part time. Father also has a second job working for a company owned by his uncle.

■ Father argued at trial that, even if he had neglected child, he had just and sufficient cause for doing so. *See* ORS 109.324. The question whether there is just and sufficient cause must be determined by considering the circumstances that caused the neglect. *Cramer v. Leistikow*, 37 Or App 539, 542-43, 588 P2d 53 (1978). Just and sufficient cause may exist if the neglect results from significant restraints imposed by the custodial parent, such as keeping the child's whereabouts secret or vigorously resisting child support or visits. *Id.* at 543. However, the lack of visitation cannot be justified simply by asserting that the other parent has made or would make visitation difficult, particularly when there has been little contact with the custodial parent. *Pizano-Varela*, 103 Or App at 633.

At trial, father asserted that he had been unable to locate mother and child so that he might contact them or send them gifts or letters. However, mother maintained the same campus address and phone number from March 1997, when she had child, until May 1999, after the petition was filed. When she lived off campus, she had her mail forwarded or continued to pick it up personally. Father admits he had both mother's campus address and phone number; he simply did not believe that she would get any mail at that address, even after the maternal grandmother told him that mother was still receiving mail there. Moreover, father had mother's parents' phone number, which he used to contact maternal grandmother in 1997; father's sister called mother's parents as well.

Father also contended that mother and the maternal grandmother prevented him from visiting child. In 1997, father telephoned the maternal grandmother, who told him that before he had direct contact with child, he needed to start providing for child. Father also telephoned mother in 1997, ostensibly to discuss the custody and visitation papers with which he had been served. That conversation ended when mother hung up on him. As a result of those two contacts, father felt that mother or her parents would make visitation or other contacts difficult.

█       Father's position suffers from two problems. First, the phone calls occurred in 1997, well before the one year preceding the petition. Second, those incidents do not constitute a significant restraint imposed by the custodial parent. Under *Pizano-Varela*, father cannot justify his lack of contact merely by asserting that mother or her family has made or would make visitation difficult; there must be a more significant limitations imposed on father's ability to visit or contact child. *See id.* at 633. In this case, the custody judgment specifically gave father visitation rights and father cannot rely on the fact that he chose not to exercise his rights to claim just and sufficient cause for not visiting. Similarly, father's conversation with the maternal grandmother does not rise to the level of just and sufficient cause. Her statement that father needed to take care of some issues surrounding his son before he was able to visit does not amount to actively hiding child or vigorously resisting visitation. On *de novo* review, we find by clear and convincing evidence that father has willfully neglected child without just and sufficient cause in the year preceding the petition.

█       Having found that father willfully neglected child, we turn to the question whether adoption by stepfather would be in the child's best interests. *Zockert v. Fanning,* 310 Or 514, 518-19, 800 P2d 773 (1990). The best interest inquiry in adoption cases is the same as that used in custody determinations. *Mahoney v. Linder*, 14 Or App 656, 666, 514 P2d 901 (1973).

█       Stepfather is the only father whom child has ever known. He has supported child since birth and continues to provide monetary and emotional support for mother and child. Stepfather and mother have a stable and loving relationship and are providing a suitable environment for child. Stepfather's parents accept child as their grandchild and spend time with him. Stepfather has expressed a desire to adopt child and to support him during his life. Balanced against stepfather's consistent love and support is father's repeated failure to support child or show any interest in him. From the time of child's birth until the time mother and stepfather petitioned to adopt child, father did not demonstrate any concern for him; only when petitioners asked the court

to terminate father's parental rights did he express any interest, not so much in child, but in retaining his unexercised parental rights. On this record, we find that it is in child's best interest that the only father he has ever known be permitted to adopt him.

Reversed and remanded with instructions to enter an order allowing the adoption.