Argued and submitted December 2, 2003, reversed and remanded
February 25, 2004

In the Matter of the Adoption of
M. Christopher Sean Ellis, a Minor Child.

Melvin Collier ELLIS
and Kjersten Janel Oquist,
*Appellants,*

*v.*

Alicia KRISTICH,
*Respondent.*

0108-69096; A117366

84 P3d 1101

Sharon E. Kelly argued the cause and filed the brief for appellants.

No appearance for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Father and stepmother petitioned for stepmother's adoption of father's child. They asked that mother's consent be dispensed with on the ground that mother willfully deserted or neglected to provide proper care and maintenance of child without just and sufficient cause for more than a year before the filing of the petition. ORS 109.324. The trial court found that petitioners failed to demonstrate mother's willful desertion or neglect without sufficient cause; the trial court found that petitioners had interfered with mother's efforts to contact child. The court then dismissed the petition on the ground that mother did not consent and that petitioners failed to establish the required basis for proceeding without her consent. Petitioners appeal, arguing that the trial court erred in finding that they failed to establish that mother had willfully deserted or neglected child for more than a year without sufficient cause. We agree with petitioners and reverse and remand.

■ We review the facts *de novo* to determine whether petitioners have established, by clear and convincing evidence, a ground for dispensing with mother's consent. *Eder v. West*, 312 Or 244, 260, 266, 266 n 25, 821 P2d 400 (1991).

Mother gave birth to child in 1991. Sometime after the birth, mother and father, who apparently were not married, separated. Child remained in mother's care.

In the fall of 1996, when child was five, the state removed child from mother's care on reports that child had been abused by someone with whom mother had left him. The state contacted father. He and stepmother, who were living together, immediately began visitations with child. Ultimately, father and stepmother were given full custody. Under the terms of the judgment awarding custody, mother was to have visitation with child after she completed a drug treatment program and a parenting class and after she provided documentation of her completion of those classes to father. Mother also was required to pay child support.

Father and stepmother married in 1997 and lived in Portland. From early 1997 to December 1999, mother did not

visit child. She lived in Portland in 1997, but was incarcerated the following year for several months on drug-related charges. She was released in 1999 and ultimately settled in Boring.

Mother met with father and stepmother four times during that approximately two-year period. At the meetings, mother delivered gifts for child. With one exception, the gifts were given to child. The exception was a bicycle that father postponed giving to child until the summer of 1999. Father explained that child was not tall enough to ride the bicycle at the time mother delivered it. Father also told mother that he thought that she was giving child too many gifts and that he preferred that she give no more than one gift at a time. He and stepmother thought that it would be confusing for child to receive so many gifts from someone who never visited. During that time, mother also wrote two letters and two cards to child. The letters were either delivered to father during the periodic meetings or mailed to father's work address. Unbeknownst to mother, father and stepmother did not deliver the cards to child. Again, they did not regard it as in child's best interests to be receiving mail from someone whom he had not seen for so long.

During the summer of 1999, father and stepmother moved to Fairview. They provided the post office a forwarding address. They also reported their change of address to the State of Oregon child support enforcement services. They did not report their change of address to mother, however. Mother had threatened to kidnap child from their custody, so they were not eager to have mother know their new address.

Father and stepmother's telephone number remained the same. It was a publicly listed number. Stepmother is self-employed as a classical musician and works primarily out of the home as a music teacher; she needs a published number to maintain her business. There also is an answering machine that always remains connected and in working order. Father and stepmother do not have "caller ID" service, nor do they have any call-blocking capability. Since 1999, father and stepmother have received no telephone calls or messages from mother. Mother testified that she called four times in early 2000, but that no one answered. She also

sent a letter to child addressed to father's place of employment around the same time, but the letter was returned to her. She telephoned father's employer, but learned that he had changed jobs.

In January 2001, mother was convicted of three felonies and sentenced to a period of incarceration. During her incarceration, mother took parenting classes and enrolled in drug treatment classes.

In August of that same year, father and stepmother filed their petition for adoption. During the trial on the petition, the court limited the evidence to the issues of abandonment and neglect and did not take evidence on the issue of the best interests of child and the ultimate question of whether the adoption should proceed. At the conclusion of the hearing, the trial court found that father and stepmother had failed to sustain their burden of proving that mother willfully abandoned child. The court cited the fact that father had failed to deliver the bicycle to child immediately and the fact that he and stepmother failed to deliver mother's cards and letters during the period from 1997 to 1999. The order dismissing the petition contains that finding and further concludes that adoption would not be in the best interests of child.

On appeal, father and stepmother assign error to both rulings. We begin with the issue of consent, specifically, whether mother's consent is not required because she abandoned child. ORS 109.324 provides:

"If either parent is believed to have willfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has willfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not

required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has willfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

Thus, as pertinent to this case, the issue is whether mother "willfully deserted or neglected" child for a period of one year before the filing of the adoption petition "without just and sufficient cause."

■    The statute does not define "willful[ ] desert[ion] or neglect[ ]." In *Eder*, however, the Supreme Court explained that the relevant question is whether, during the year preceding the filing of the petition for adoption, the nonconsenting parent "wil[l]fully fail[ed] to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship." 312 Or at 266.

■    The statute also does not define what constitutes "just and sufficient cause." We explained in *Panter v. Ash*, 177 Or App 589, 594, 33 P3d 1028 (2001), that the question whether there is just and sufficient cause must be determined by considering the circumstances that caused the neglect. Just and sufficient cause may exist if the neglect results from significant restraints imposed by the custodial parent, such as keeping the child's whereabouts secret, declining child support, or vigorously resisting visits. *Id.* A lack of visitation, however, cannot be justified simply by asserting that the custodial parent has made or would make visitation difficult, particularly when there has been little contact with the custodial parent. *Pizano-Varela v. Gomez*, 103 Or App 629, 633, 798 P2d 724 (1990).

Our decision in *Panter* illustrates the application of the foregoing principles. In that case, the father of the child contended that, although he had failed to contact the child for several years before the filing of the adoption petition, his lack of contact was justified because of his asserted inability to locate the mother and the child so that he might send them

gifts or letters. We rejected that argument. We noted that the mother had had her mail forwarded, that she had picked it up continually, and that her telephone number had remained the same during the relevant time. The father simply believed that attempted contacts would have been unsuccessful, based on earlier conversations with the mother's parents, who told him that he should provide for the child before contacting him, and a telephone conversation with the mother, who hung up on the father. We concluded that the father's belief that attempted contacts would be unsuccessful was not persuasive. First, we noted that the disagreements with the mother's parents and with the mother occurred more than one year before the filing of the petition. Second, we noted that, in any event, those conversations did not actually interfere with his ability to contact the child. The father, we held, "cannot justify his lack of contact merely by asserting that mother or her family has made or would make visitation difficult; there must be a more significant limitation[ ] imposed on father's ability to visit or contact child." *Panter*, 177 Or App at 594-95.

▪ In this case, it is undisputed that mother failed to contact child at all during the year before the filing of the adoption petition. Indeed, mother has not seen child—who was ten years old at the time of the hearing—since he was five. The judgment awarding father custody of child expressly provided mother the right to visit child as long as she demonstrated that she had complied with the requirement that she complete drug treatment and parenting classes. Mother never complied with the terms of that judgment. The only issue therefore is whether mother's failure to manifest any expression of concern for child was justified under the circumstances.

Mother argued at the hearing that father and stepmother had interfered with her ability to contact child. She cited the failure of father and stepmother to deliver gifts, cards, and letters. As in *Panter*, however, those incidents occurred well before the relevant time period. Moreover, there is no evidence that mother knew that father and stepmother had failed to deliver the gifts, cards, or letters (in fact, mother did not know that until the hearing) and likewise no evidence that the failure to do so had anything to do with

mother's decision not to attempt to contact child in any way during the year before the filing of the petition.

Mother also argued that father and stepmother interfered with her ability to contact child by neglecting to advise her of the change in their residential address and the change in father's place of employment. Whether or not father's and stepmother's conduct in that regard was well advised, however, there is no evidence that it actually interfered with any attempt to contact father, stepmother, or child. Mother's most recent attempts to contact father, which were in early 2000 and thus before the relevant period, consisted of four telephone calls that simply were not answered. There is no evidence that mother made any other telephone calls or took any steps to learn a current residential or employment address. As in *Panter*, although father and stepmother did not go out of their way to facilitate contact, neither did they interfere with it.

We find that father and stepmother established that, in the year before the filing of the petition, mother willfully deserted or neglected child without just and sufficient cause and that the trial court erred in finding to the contrary.

■ Father and stepmother also assign error to the conclusion in the trial court's order that adoption is not in the best interests of child. Ordinarily, if a court finds that, in the year before the filing of the petition, the natural parent has deserted or neglected the child without just and sufficient cause, the court must then decide whether adoption is in the best interests of the child. *Eder*, 312 Or at 261. In this case, however, the trial court limited the scope of the evidence to the preliminary question whether mother justifiably deserted or neglected child. Thus, although the order does recite a conclusion that adoption is not in child's best interests, there is no evidence in the record on that issue. We therefore decline to address it on appeal and instead reverse and remand for further proceedings.

Reversed and remanded.