IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2004

IN RE: **ADOPTION OF T.A.M.**

**Appeal from the Chancery Court for Lincoln County**
**No. A-184     J.B. Cox, Chancellor**

_____

**No. M2003-02247-COA-R3-PT - Filed May 12, 2004**
_____

This appeal involves the termination of the parental rights of an incarcerated biological father of a five-year-old child. The child's mother and her new husband filed a petition in the Chancery Court for Lincoln County seeking to terminate the biological father's parental rights and to approve the new husband's adoption of the child. Following a bench trial, the trial court entered an order on August 29, 2003 granting the petition to terminate the biological father's parental rights on the ground of abandonment. The biological father appealed. We concur with the trial court's conclusion that the father abandoned his child by willfully failing to support and visit the child and that terminating the biological father's parental rights is in the child's best interests. Accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., filed a concurring opinion.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellant, B.A.M.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellees, J.E.K. and M.W.K.

**OPINION**

**I.**

The child at the center of this case has been in the custody of his mother, J.E.K., since his birth on October 20, 1997. J.E.K. and the child's biological father, B.A.M., were living together when the child was born, and sometime later, J.E.K. and B.A.M. were married. They divorced on February 15, 2000, while B.A.M. was incarcerated in the Lincoln County Jail. The final divorce decree required B.A.M., upon his release from jail, to petition the court to establish an appropriate child support and visitation schedule.

J.E.K. arranged for B.A.M. to visit the child on several occasions while he was incarcerated in the Lincoln County Jail. When B.A.M. was released from jail on September 5, 2000, he moved several hundred miles away to live with his parents in Greene County. However, B.A.M. never petitioned the court to establish a child support or visitation schedule, and, over the next nine months, never attempted to pay support in spite of the fact that he was living rent-free with his parents, was being provided with food and a $10-a-week stipend, and at some point obtained employment with Natural Springs paying approximately $7 an hour. In addition, he never attempted to visit the child after J.E.K. declined his request to drive the child from Lincoln County to Chattanooga for visitation.

B.A.M. committed additional crimes after he moved to Greene County, and he was eventually returned to prison on June 6, 2001. At the time of these proceedings, he was serving a seven-year sentence at Brushy Mountain Correctional Complex for crimes committed in Lincoln and Greene Counties.

On February 15, 2002, two years after her divorce from B.A.M., J.E.K. married M.W.K. On February 5, 2003, J.E.K. and M.W.K. filed a petition seeking a court order terminating B.A.M.'s parental rights and approving M.W.K.'s adoption of the child. The trial court heard testimony from both B.A.M. and J.E.K. during a bench trial on August 19, 2003. B.A.M. admitted that he had made no attempt to pay child support during the approximately nine months between his release from the Lincoln County Jail and his re-incarceration at Brushy Mountain. He also admitted that in the four months preceding his re-incarceration at Brushy Mountain, not only had he not visited the child, but he had made no attempts to do so. During this four-month period, B.A.M. did not visit the child, attempt to visit the child, or communicate in any way with J.E.K. regarding visitation with the child. He admitted that he has never made any effort to secure or enforce visitation rights with the child by coming to court or seeking the assistance of an attorney.[1]

J.E.K. confirmed B.A.M.'s lack of support for and visitation with the child. She testified that the child has lived with her and her new husband since their marriage in February of 2002. She also offered uncontested testimony that she has a good marriage, that M.W.K. and the child get along very well, and that she and M.W.K. are financially able to support the child.

On August 29, 2003, the trial court entered an order setting forth specific findings of fact and terminating B.A.M.'s parental rights. The trial court first concluded that J.E.K. and M.W.K. had established the statutory ground of abandonment by clear and convincing evidence. In support of this conclusion, the court cited the fact that B.A.M. did not visit or attempt to visit the child during the four months preceding his present incarceration and that he had paid no support for the child during that time. The trial court also found that B.A.M. had displayed a wanton disregard for the welfare of the child following his release from the Lincoln County Jail by failing to return to the divorce court for the establishment of an appropriate child support schedule and by failing to make any payments toward the support of the child when he was clearly able to do so. The trial court

---

[1] In fact, B.A.M. actually offered to surrender his parental rights in exchange for $350 from J.E.K. and assistance from her lawyer in obtaining sentence credit for time he claimed to have served in the Lincoln County Jail.

considered B.A.M.'s most recent conviction to be further evidence of his wanton disregard for the welfare of the child.

The trial court then considered whether termination of B.A.M.'s parental rights would be in the child's best interests. The trial court found that the child had little or no knowledge of B.A.M. and that B.A.M. had not visited or supported the child in any way. The court specifically considered the following three statutory factors in making its best interests determination: (1) that B.A.M. had failed to maintain regular visitation with the child, (2) that no meaningful relationship had been established between B.A.M. and the child, and (3) that B.A.M. had not paid to support the child. The court determined that termination of B.A.M.'s parental rights would be in the child's best interests. Accordingly, the trial court terminated B.A.M.'s parental rights. The trial court continued the finalization of the child's adoption by M.W.K. to another date. B.A.M. appealed the termination of his parental rights.

## II.

Proceedings to terminate parental rights are entirely statutory. Persons seeking to terminate a parent's rights with regard to his or her child must prove two things. First, they must prove the existence of at least one statutory ground for termination.[2] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Second, they must prove that terminating the parent's parental rights is in the child's best interests.[3] Tenn. Code Ann. § 36-1-113(c)(2); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

In light of the constitutional dimension of parental rights, persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re A.W.*, 114 S.W.3d at 545. This heightened standard of review prevents unwarranted termination or interference with a biological parent's parental rights. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d at 622. Evidence that satisfies the clear and convincing evidence standard eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *Estate of Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997); *In re C.D.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the propositions sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

Because of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c), we must adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we

---

[2] The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g) (Supp. 2003).

[3] The factors to be considered in a "best interests" analysis can be found in Tenn. Code Ann. § 36-1-113(i).

must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for terminating the biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 546; *Ray v. Ray*, 83 S.W.3d at 733; *In re L.S.W.*, No. M2000-01935-COA-R3-JV, 2001 WL 1013079, at *5 (Tenn. Ct. App. Sept. 6, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001).[4]

The first statutory ground for terminating a parent's parental rights is "[a]bandonment by the parent . . . as defined in § 36-1-102." Tenn. Code Ann. § 36-1-113(g)(1). Where, as here, the parent is incarcerated when the termination proceedings are instituted, "abandonment" means that the parent "either has willfully failed to visit[,] . . . to support, or . . . to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding . . . incarceration, or . . . has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2003). The statute defines "willfully failed to visit" as "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). The statute defines "willfully failed to support" as "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D).

The concept of "willfulness" is at the core of the statutory definition of abandonment. "Willfully" is a word of many meanings, and so each use of the word must be interpreted with reference to the statutory context in which it appears. *United States v. Sanchez-Corcino*, 85 F.3d 549, 552-53 (11th Cir. 1996); GEORGE W. PATON, A TEXTBOOK ON JURISPRUDENCE 313 n.2 (4th ed. 1972) (suggesting that use of the word should be avoided because of its ambiguities). "Willfulness" does not require the same standard of culpability required by the penal code. *G.T. v. Adoption of A.E.T.*, 725 So. 2d 404, 409 (Fla. Dist. Ct. App. 1999). Nor does it require malevolence or ill will. *In re Adoption of a Minor*, 178 N.E.2d 264, 267 (Mass. 1961). Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *In re Mazzeo*, 131 F.3d 295, 299 (2d Cir. 1997); *United States v. Phillips*, 19 F.3d 1565, 1576 (11th Cir. 1994); *In re Adoption of Earhart*, 190 N.E.2d 468, 470 (Ohio Ct. App. 1961). Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003) (No Tenn. R. App. P. 11 application filed).

---

[4]These decisions draw a distinction between specific facts and the combined weight of these facts. Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion. The Tennessee Supreme Court used this approach in *In re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court to support this conclusion. *In re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838.

Failure to support a child is "willful" when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support.[5] *Shorter v. Reeves*, 32 S.W.3d 758, 760 (Ark. Ct. App. 2000); *In re B.S.R.*, 965 S.W.2d 444, 449 (Mo. Ct. App. 1998); *In re Estate of Teaschenko*, 574 A.2d 649, 652 (Pa. Super. Ct. 1990); *In re Adoption of CCT*, 640 P.2d 73, 76 (Wyo. 1982). A biological parent's willful failure to support or visit is not excused by a custodial parent's or third party's conduct unless the conduct either actually prevents the parent from performing his or her duty to support or visit, *In re Adoption of Lybrand*, 946 S.W.2d 946, 950 (Ark. 1997), or amounts to a significant restraint on or interference with the parent's efforts to support or develop a relationship with his or her child. *In re Serre*, 665 N.E.2d 1185, 1189 (Ohio Ct. C.P. 1996); *Panter v. Ash*, 33 P.3d 1028, 1031 (Or. Ct. App. 2001).[6] Thus, attempts by others to frustrate or impede a parent's visitation do not necessarily provide a justification for failing to support a child financially. *Bateman v. Futch*, 501 S.E.2d 615, 617 (Ga. Ct. App. 1998); *In re Leitch*, 732 So. 2d 632, 636 n.5 (La. Ct. App. 1999).

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. *American Cable Corp. v. ACI Mgmt., Inc.*, No. M1997-00280-COA-R3-CV, 2000 WL 1291265, at *4 (Tenn. Ct. App. Sept. 14, 2000) (No Tenn. R. App. P. 11 application filed). Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *See Johnson City v. Wolfe*, 103 Tenn. 277, 282, 52 S.W. 991, 992 (1899); *Absar v. Jones*, 833 S.W.2d 86, 89-90 (Tenn. Ct. App. 1992); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983); *see also In re K.L.C.*, 9 S.W.3d 768, 773 (Mo. Ct. App. 2000). A person's demeanor and credibility as a witness also play an important role in determining intent. Accordingly, trial courts are best suited for making willfulness determinations. *In re D.L.B.*, 118 S.W.3d at 367.

### III.

We have reviewed the parties' joint statement of the evidence, the trial court's August 29, 2003 order and findings of fact, the briefs of the parties, and the remainder of the record on appeal. J.E.K. and M.W.K. proved by clear and convincing evidence that B.A.M. willfully failed to visit, support, or make reasonable payments toward the support of his child during his nine months of freedom in late 2000 and 2001. Indeed, it is undisputed that for the four months preceding his re-

---

[5] A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995); *Pierce v. Bechtold*, 60 Tenn. App. 478, 487, 448 S.W.2d 425, 429 (1969).

[6] Conduct that amounts to a significant restraint on or interference with a parent's efforts to support or develop a relationship with a child includes (1) telling a man he is not the child's biological father, (2) blocking access to the child, (3) keeping the child's whereabouts unknown, (4) vigorously resisting the parent's efforts to support the child, or (5) vigorously resisting a parent's efforts to visit the child. *In re S.A.B.*, 735 So. 2d 523, 524 (Fla. Dist. Ct. App. 1999); *In re Adoption of Children by G.P.B., Jr.*, 736 A.2d 1277, 1286 (N.J. 1999); *Panter v. Ash*, 33 P.3d at 1031. No such conduct occurred in this case.

incarceration in June 2001, B.A.M. not only failed to visit and support his child but also failed to make any attempt to do so. Thus, the trial court properly concluded that J.E.K. and M.W.K. proved by clear and convincing evidence that B.A.M. abandoned the child and that it would be in the child's best interests for B.A.M.'s parental rights to be terminated.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to B.A.M. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.