In the Matter of the Adoption of
N. L. F., whose adopted name is N. L. H.,
and G. E. F., whose adopted name is G. E. H.

C. R. H.
and R. L. H.,
*Petitioners-Respondents,*

*v.*

B. F.,
*Respondent-Appellant.*

Marion County Circuit Court
06C30406; A135019

169 P3d 1286

Daphne E. Mantis argued the cause and filed the brief for appellant.

Crystal Henry argued the cause for respondent. With her on the brief was The VanderMay Law Firm.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

In this contested adoption case, father appeals from an order allowing stepfather to adopt mother and father's two daughters. He argues that the trial court erred in finding that he had willfully deserted the children or had neglected to provide proper care and maintenance for them without just and sufficient cause for more than a year before the filing of the petition. ORS 109.324. We review the record in a contested stepparent adoption proceeding *de novo* to determine whether the parents who petitioned to adopt a child have established, by clear and convincing evidence, a ground for dispensing with the nonpetitioning parent's consent to the adoption. *Eder v. West*, 312 Or 244, 246, 266, 821 P2d 400 (1991). We reverse.

Mother and father began dating when mother was 17 years old and father was 23 years old. They never married, but they lived together from 2002 until late 2003. They have two daughters, who were ages seven and four at the time of the adoption hearing.

After the birth of the second daughter, mother's 15-year-old sister moved into mother and father's home for several months to help care for the children. During that time, father raped mother's sister several times, provided her with alcohol and marijuana, and used and sold marijuana from the home. In November 2003, the police arrested father and, in December, father pleaded guilty to sexual abuse in the second degree, delivery of a controlled substance to a minor, delivery of a Schedule I controlled substance, and child neglect in the first degree. In the meantime, the Department of Human Services (DHS) investigated mother after father's arrest and determined that she was a fit parent for her children. DHS thereafter allowed the children to remain in mother's custody on the condition that she not allow contact between father and the children.

Father was incarcerated for his crimes beginning in December 2003. Shortly after beginning his sentence, he made some telephone calls to mother until she changed her telephone number; no evidence indicates that father attempted to contact her or the children after that point. In

March 2006, father was released from prison. His post-prison supervision conditions preclude him from having any contact with the children until 2010. Contact with the children after that date is conditioned on father's completing drug and sex offender treatment programs.

In February 2006, mother and stepfather, whom mother married in 2004, petitioned the court under ORS 109.312 for permission for stepfather to adopt the children. Father objected to the petition, and the case went to trial. At trial, mother and stepfather asked the court to grant the adoption over father's objection on the ground that father had willfully deserted the children or had neglected, without just and sufficient cause, to provide proper care and maintenance for the children for more than one year before the filing of the petition. Specifically, they argued that, because father had engaged in criminal behavior that he should have known would result in his incarceration and inability to parent his children, they had satisfied their burden under ORS 109.324 to establish that father had willfully deserted or neglected the children. In a letter opinion, the trial court granted the petition for adoption, stating,

> "While the incarceration in this case itself is not seriously detrimental to the children[,] in this Court[']s opinion the reasons for the incarceration * * * are seriously detrimental to the children. * * *
>
> "During his incarceration and since his release * * * [father] has provided no support for his children. His parole[,] which provides for no contact with minor children[,] ends in 2010 when his eldest daughter begins reaching her teen years, and would be in danger from him. [Father] is a drug dealer and an untreated sex offender and contact with his daughters would be extremely dangerous to them.
>
> "Clearly the welfare of the children is best promoted by the adoption[,] which is allowed."

On appeal, father assigns error to the granting of the petition. Father argues that, by construing his criminal behavior and subsequent incarceration as evidence of willful desertion or neglect, the trial court conflated the standards for termination of parental rights under ORS chapter 419B

with the statutory exception to parental consent for adoption under ORS 109.324. In response, mother and stepfather contend that the trial court correctly inferred father's intention to willfully desert or neglect the children because father should have realized that the "natural consequences" of his criminal conduct could include incarceration and an inability for him to continue to parent the children.

■      Thus, the issue in this case is whether father's intentional criminal behavior, which resulted in his incarceration and the entry of orders prohibiting him from contacting his children, supports a finding under ORS 109.324 that father willfully deserted or neglected the children.

■      To start, a brief summary of Oregon adoption law is helpful. Under ORS 109.312, a petition for adoption requires both biological parents to consent to the adoption, "[e]xcept as provided in ORS 109.314 to 109.329[.]" *Michels v. Hodges*, 326 Or 538, 544, 956 P2d 184 (1998). ORS 109.314 to 109.329 provide six statutory substitutes for a biological parent's consent, any of which supplies a jurisdictional foundation for the trial court to act on an adoption petition. *Id.*; *see also Eder*, 312 Or at 260 ("[G]enerally[,] a court lacks jurisdiction to proceed with an adoption absent consent or a statutory substitute for it."). Grounds for termination of a person's parental rights under ORS chapter 419B do not independently give a trial court jurisdiction over an adoption. *Michels*, 326 Or at 546.

■      The applicable statutory exception in this case, ORS 109.324,[1] provides that the court may dispense with a parent's consent to an adoption

> "if the court finds that the parent has willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption[.]"

---

[1] Mother and stepfather do not advance, and indeed, the record does not support, grounds for the application of any other statutory exception to father's consent, including ORS 109.322, which dispenses with a parent's consent if the parent has been "imprisoned in a state or federal prison under a sentence for a term of not less than three years and has actually served three years[.]" ORS 109.322. Father served his sentence from December 2003 to March 2006; thus, ORS 109.322 does not apply to father.

The petitioners to the adoption—in this case, mother and stepfather—bear the burden to prove willful desertion or neglect without just and sufficient cause. *Eder*, 312 Or at 266, 270.

■     The court's application of legal principles to the facts in *Eder* guides our inquiry as to whether father's criminal behavior constitutes willful desertion of the children. As the court explained in *Eder*,

> "[t]he term 'desertion,' as used in ORS 109.324, is parental conduct that evinces a *settled purpose* to [forgo], abandon, or desert all parental duties and parental rights in the child."

*Id*. at 270 (citations omitted; emphasis added). In that case, the biological mother had sexually abused one of her sons. *Id*. at 247. As a result of that abuse, a court entered an order preventing her from directly contacting her children unless she admitted to sexually abusing her son and underwent therapy with a court-specified therapist. *Id*. at 247-49. The mother refused to admit to the abuse and sought alternative therapy. *Id*. at 249.

Based on those facts, the petitioners to the adoption in *Eder* sought to dispense with the mother's consent to the adoption, arguing that the mother willfully deserted her children because her refusal to take the specific steps needed to lift the court order was "an intentional, voluntary decision to deny [her children] her presence in their lives." *Id*. at 269. Ultimately, the Supreme Court did not find that the mother had willfully deserted her children, in part, because she had done what she could in her situation: She had contacted the children to the extent that she could under the court order and had sought alternative treatment. *Id*. at 268-70.

That result, in light of the petitioners' argument in *Eder* and the meaning of "settled purpose," as explained in *Eder*, supports our conclusion that willful desertion occurs when a parent's actions or inaction evince an intentional choice directed toward the specific result of deserting the child. In other words, the parent must do more than simply disregard the risks of incurring a consequence that would

limit contact with his or her child, such as incarceration; the parent must intend to desert his or her child.

Here, mother and stepfather's argument is similar to the petitioners' argument in *Eder*, insofar as it focuses on the potential consequences, rather than the intended results, of father's conduct. Father's offenses include raping a 15-year-old girl, providing her with drugs and alcohol, and possessing drugs for sale; none of those crimes supports a finding that father had a "settled purpose to [forgo], abandon, or desert all parental duties and parental rights in the child[ren]." *Id*. at 270. Although incarceration and an inability to support or parent his children may be foreseeable consequences of being apprehended for those crimes, father's criminal conduct demonstrates, at most, his intent to commit those crimes, not to permanently remove his children from his life. Consequently, we do not find on this record that father's criminal conduct constitutes willful desertion of his children.

■■    Mother and stepfather likewise argue that father's decision to commit the criminal acts that led to his incarceration constitutes neglect to provide proper care and maintenance for his children. We reject that argument for the same reasons that led us to conclude that father's criminal conduct did not constitute willful desertion of his children. To determine whether neglect exists, the court explained in *Eder* that the relevant question is whether,

> "[d]uring the year preceding the filing of the petition for adoption, * * * the non-consenting parent wil[l]fully fail[ed] to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship[.]"

*Id*. at 266. That standard, as with the standard for willful desertion, requires evidence of a parent's deliberate decision not to maintain the parent-child relationship. Mother and stepfather's argument, which focuses on father's disregard of the risk that his criminal conduct could affect the parent-child relationship, conflates the standards for terminating parental rights under ORS chapter 419B with the standards for dispensing with father's consent under ORS 109.324. As the *Michels* court held, the termination standards under

ORS chapter 419B do not confer jurisdiction on a trial court to entertain an adoption petition. Thus, father's intent to commit criminal acts, in and of itself, cannot satisfy the standard for neglect of his children without just and sufficient cause.

In any event, we conclude that father's circumstances constitute just and sufficient cause to excuse his failure to provide proper care and maintenance for the children. If a court finds that a parent has neglected his or her children, the relevant inquiry shifts to whether just and sufficient cause excuses the parent's neglect. ORS 109.324; *see Panter v. Ash*, 177 Or App 589, 594, 33 P3d 1028 (2001) (determining whether the father's neglect was justified by just and sufficient cause). We have explained that "whether there is just and sufficient cause must be determined by considering the circumstances that caused the neglect." *Panter*, 177 Or App at 594 (citation omitted). Circumstances justifying a lack of contact with a child may exist where the custodial parent vigorously resists the other parent's contacts or support. *Id*. However, just and sufficient cause requires "a more significant limitation[ ] imposed on [the parent's] ability to visit or contact [the] child" than mere assertions that the custodial parent has made or would make contact with the child difficult. *Id*. at 594-95.

Here, in the year before mother and stepfather filed the adoption petition, father did not attempt to contact the children, and there is no debate as to whether that lack of contact in and of itself could constitute neglect. *See, e.g., Stubbs v. Weathersby*, 320 Or 620, 635-37, 892 P2d 991 (1995) (finding willful neglect where the mother could have but did not contact her child); *Ellis v. Kristich*, 192 Or App 213, 219-20, 84 P3d 1101 (2004) (finding willful neglect where the mother failed to contact her child); *Panter*, 177 Or App at 593 (finding willful neglect where the father made no efforts to contact or support his child). However, the circumstances causing the neglect, namely, father's post-prison supervision conditions, provide just and sufficient cause to justify the neglect. Unlike a situation where a parent has the opportunity or means to contact his or her children and chooses not to do so, a court order or post-prison supervision condition

prohibiting contact with a child is a "more significant limitation[ ] imposed on [the parent's] ability to visit or contact [the] child." *Panter*, 177 Or App at 595. Further, to the extent that mother and stepfather argue that father should have attempted to contact them, that argument encourages a result that would require a parent to violate a post-prison supervision condition in order to comply with ORS 109.324, or, worse, that could compel a parent in a similar situation to initiate unwelcome communications and contacts with his or her co-parent or children. Hence, we do not find that father neglected without just and sufficient cause to provide proper care and maintenance for his children for a year preceding the filing of the adoption petition.

We acknowledge that father engaged in serious criminal conduct, particularly when considered within the context of an adoption petition. However, again, as the *Michels* court explained, conduct that may provide grounds for termination of a person's parental rights under ORS chapter 419B cannot, in itself, confer jurisdiction on a court to act on an adoption petition. A court has jurisdiction to act on an adoption petition only when one of the criteria in ORS 109.312 to 109.329 is present. Father's criminal conduct constitutes neither willful desertion of his children nor neglect without just and sufficient cause to provide for their care and maintenance. Consequently, the trial court erred in granting the adoption petition without father's consent.

Reversed.