IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2016 Session

**IN RE: ADDISON P.**

**Appeal from the Chancery Court for McMinn County**
**No. 2015-CV-38     Jerri Bryant, Chancellor**

_____

**No. E2015-02102-COA-R3-PT**
**FILED-MAY 20, 2016**

_____

Mother appeals the termination of her parental rights on grounds of abandonment by willful failure to visit and wanton disregard. Because the trial court entered an order during the proceedings that excluded wanton disregard as a ground and this ground was not tried by implied consent, we reverse the trial court's finding of wanton disregard. In addition, the trial court failed to make any finding that Mother's failure to visit the child was willful. Accordingly, we vacate this ground and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN D. MCCLARTY, J., joined.

Rachel Fisher, Cohutta, Georgia, for the appellant, Marquita P.

Matthew C. Rogers, Athens, Tennessee, for the appellees, Randall P. and Jamie P.

**OPINION**

**Background**

The child was born in February 2013, to married parents Marquita P. ("Mother") and Randall P. ("Father").[1] Parents soon divorced and Father married Jamie P. ("Step-mother," and together with Father, "Petitioners"). On September 30, 2014, Petitioners filed a petition in the McMinn County Circuit Court to terminate Mother's parental rights on grounds of abandonment by willful failure to visit, failure to seek reasonable visitation with the child, and failure to manifest an ability and willingness to assume legal and physical custody of the child.

The circuit court eventually appointed counsel for Mother and a guardian ad litem for the child.[2] Mother, through her counsel, filed an answer to the termination petition on December 12, 2014 generally denying the allegations contained in the petition. On December 12, 2014, Mother filed a motion to disqualify Petitioners' counsel on the ground that their attorney had served as mediator in the parents' divorce. On December 29, 2014, Mother filed a motion to dismiss the termination petition arguing that because the McMinn County Chancery Court heard the parties' divorce, it was "more familiar" with the parties and the underlying facts. In addition, Mother contended in her motion to dismiss that the termination petition failed to state a claim upon which relief could be granted.

On January 20, 2015, the circuit court entered an agreed order substituting Petitioners' counsel. On February 11, 2015, the circuit court entered an order transferring this matter to the McMinn County Chancery Court ("the trial court").

Mother next filed a motion for supervised visitation on March 30, 2015. In her motion, Mother admitted that pursuant to the parties' divorce decree, she was required to pass a "(90) day extended opiates hair follicle drug screen" before she could have supervised visitation with the child. Mother alleged that she had provided a copy of her clean drug screen to Father and his counsel on January 23, 2015. Mother further admitted that she was served with the termination petition on September 30, 2014, while Mother was incarcerated due to a probation violation "resulting from a relapse." Mother alleged that she "did not have sufficient time to provide a clean drug screen from her relapse . . . before Father filed to terminate her parental rights." Mother attached her negative drug screen as an exhibit to her motion. Finally, Mother indicated that she intended to take a second drug screen on February 15, 2015, despite the fact that her visitation motion was filed over one month after this date. Mother did not include any documents concerning the alleged second drug screening.

---

[1] In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.
[2] The initial guardian ad litem appointed for the child moved to be relieved from the appointment. A different guardian ad litem was eventually appointed for the child.

On April 20, 2015, Father responded in opposition to Mother's motion for supervised visitation, arguing that the negative drug screen provided by Mother "did not fulfill the requirements" of the parties' divorce decree. Father also stated that he had not received any documents concerning Mother's purported February 2015 drug screen, which Mother indicated was to take place nearly two months prior to the filing of Father's response. Father suggested that Mother's failure to follow through with her promise to take a second drug screen resulted from another drug relapse.

On April 21, 2015, Mother renewed her motion to dismiss for failure to state a claim. Like her original motion, the renewed motion included absolutely no indication as to why the termination petition failed to state claim for which relief may be granted. On April 23, 2015, Mother also filed an amended answer to the termination petition. In her amended answer, Mother raised, for the first time, that she was not properly served with the termination petition under Tennessee Code Annotated Section 36-1-113(f)[3] and

---

[3] Tennessee Code Annotated Section 36-1-113(f) provides:

> Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:
>
> (1) The time and place of the hearing to terminate parental rights;
> (2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
> (3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;
> (4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:
>
> > (A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and
> > (B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and
>
> (5) If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court

Tennessee Rule of Juvenile Procedure 39,[4] that the termination petition "fails to confirm with the requirements for the grounds to terminate the rights of legal parents," that the termination petition "fails to conform to the statutory requirements . . . [regarding Father's] parental consent for the adoption of the child," and that Father lacked standing to pursue the petition. In addition, Mother contended that her failure to visit should not be considered willful because Father frustrated her attempts to visit.

---

may proceed with such action without the parent's or guardian's participation.

[4] Similarly to Tennessee Code Annotated Section 36-1-113(f), Rule 39(b) of the Tennessee Rules of Juvenile Procedure provides:

(1) Upon the filing of the petition, the court shall cause the necessary parties as provided in T.C.A. § 36-1-117 to be summoned in accordance with the Tennessee Rules of Civil Procedure.
(2) Prior to terminating the rights of any parent who is incarcerated it must be affirmatively shown to the court that the incarcerated parent or guardian received notice of the following:

(A) The time and place of the hearing to terminate parental rights;
(B) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
(C) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances; and
(D) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:

(i) If indigent, will be provided with a court appointed attorney to assist the parent or guardian in contesting the allegation, and
(ii) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure.
(E) If the incarcerated parent or guardian voluntarily signs a waiver or if said person takes no action after receiving notice of such rights, the court may proceed with the termination proceedings without the presence of the incarcerated parent or guardian.

- 4 -

Father filed a reply to Mother's response, denying that Tennessee Code Annotated Section 36-1-113(f) was in any way applicable because Mother was no longer incarcerated and has fully participated through counsel in the termination proceedings. Father also denied that Mother's affirmative defenses were relevant to the current proceedings. Finally, Father contended that any issue of Mother's willful failure to visit was an issue of fact that could not be resolved through a motion to dismiss.

The trial court entered an order denying Mother's motion to dismiss on June 2, 2015, *nunc pro tunc* to April 23, 2015 ("the June 2, 2015 order"). In its order, the trial court ruled that "the grounds to be proved in this matter . . . are failure to pay support and failure to visit." The trial court also continued Mother's motion for supervised visitation. At a hearing on May 7, 2015, however, Mother withdrew her visitation motion. The trial court entered an order on June 2, 2015, allowing Mother to have two phone calls per week with the child.

On August 6, 2015, Mother filed a motion in limine seeking to exclude any testimony from her current husband Shelby B. ("Husband"). In her motion, Mother admitted that Husband had a prior criminal conviction, but contended that his testimony was not relevant because she was not seeking unsupervised visitation with the child. Mother also contended that Husband's testimony was more prejudicial than probative and that his testimony would include confidential marital communications.[5]

The trial occurred on August 10 and 26, 2015. Much of the testimony at trial concerned Mother's drug use and criminal activity. According to Father, he initiated the parties' divorce shortly after the child's birth when he learned that Mother abused drugs during her pregnancy. Fortunately, the child tested negative for drug dependency after her birth. On February 14, 2013, Father obtained an ex parte order from the trial court presiding over the parties' divorce ("divorce court") naming him temporary custodian of the child and limiting Mother to only supervised visitation. Initially, Father was required to supervise the visits. On April 9, 2013, the divorce court entered an order finding that Mother has a "substantial problem with substance abuse," but noted that her enrollment in a drug treatment program was "a step in the right direction." Because Mother admitted she would fail, the trial court did not require Mother to submit to a hair follicle drug screen. However, the divorce court ruled that Mother was only entitled to supervised visitation by Father or another agreed upon individual unless and until Mother "show[ed] proof that she is clear for 45 days . . . with proof of two separate drug screens paid for at [Mother's] expense, then [Mother's] father can be the supervisor for her co-parenting time." If, however, Mother "fail[ed] three drug screen at any time, then her co-parenting time will be automatically suspended." Mother was also allowed to attend all of the

---

[5] The trial court ultimately allowed Husband to testify after it was determined that no confidential marital communications would be discussed.

child's doctor's appointments. The parties eventually agreed to allow Tim Hyde, the executive director of Family Court Services, to supervise Mother's visitation.

The divorce court ultimately entered a final decree of divorce on October 16, 2013. The divorce court found that Mother had not provided any negative drug screens to the court or Father. Indeed, Mother admitted that she made no effort to comply with the trial court's previous orders concerning drug screenings, even refusing to participate in a drug screening set up and paid for by Father. Accordingly, the divorce court ruled that Mother "could take a ninety day extended opiates hair follicle drug screen and then her father could be the supervisor as long as the same was clean for all substances." Further, once Mother passes "two (2) consecutive extended opiate hair follicle drug screens, at least one hundred and eighty (180) days apart, then she shall be allowed to exercise her co-parenting time unsupervised." The divorce court ruled that Mother will be solely responsible for obtaining testing and providing information to Father and his counsel. In the meantime, Mother was permitted supervised visitation "as the parties have grown accustomed to."

On October 15, 2013, one day before the entry of the final divorce decree, however, Mother was arrested for stealing drugs from Father's police car, when he worked in the canine drug unit. As a result of this arrest, Family Court Services terminated Mother's supervised visitation. Mother testified at trial that although she called around town to find another service to supervise visitation, none were available in the immediate area. Because Father would not agree to any other supervisor, Mother's visitation with the child stopped and never resumed. Mother eventually posted a $50,000.00 bond on the theft charge, but testified that she received the funds to do so from family members.

On April 7, 2014, Mother pleaded guilty to theft between $500.00 and $1,000.00 and was sentenced to two years supervised probation. On July 11, 2014, however, Mother tested positive for amphetamines/methamphetamines in violation of her probation and was, therefore, arrested. Mother remained incarcerated when Father and Step-mother filed their termination petition and Mother was served with the petition while in jail. Mother's probation was subsequently revoked by order of October 3, 2014. Because Mother was only sentenced to time served, she was released from jail on October 3, 2014, with the remainder of her sentence to be served again on probation.

Mother admitted at trial, that prior to her incarceration in July 2014, she could not have passed two consecutive 90 day extended hair follicle drug screenings. Indeed, Mother testified that she has been diagnosed as an addict. Mother contended, however, that she would have been able to pass one 90 day drug screening in February 2014. Mother also testified that she has been free of drugs since her July 2014 incarceration. The record on appeal contains three negative drug screenings provided by Mother: (1) a November 8, 2014 hair follicle screening; (2) a February 24, 2015 expanded hair follicle

screening; and (3) a May 27, 2015 expanded hair follicle drug screening, all of which indicated that that Mother was negative for all illegal substances tested.

Mother testified at trial that Mr. Hyde informed her that she would have to return to the divorce court before he would allow her to resume visitation under his supervision. Mother never returned to court seeking visitation, conceding that the reason she never petitioned the court for visitation after it was terminated by Family Court Services was that she could not pass a hair follicle screening. Indeed, Mother admitted that she never even attempted to take a drug screening during this time or when she was purportedly clean from drugs.

Mother testified that she made at least one attempt to regain visitation prior to the filing of the termination petition. According to Mother, she called Father in February 2014 to request visitation with the child. Mother offered that her own father could supervise the visitation. According to Mother, Father replied that he would only allow visitation as had previously been agreed, under the supervision of Family Court Services. Other than another phone call in June 2014, Mother made no other effort to reinstate visitation until her March 2015 motion, which was eventually withdrawn. After the trial court allowed Mother to make phone calls to the child, Mother admitted that she only made one phone call in May 2015. Mother testified that it was difficult to speak with the child, who is largely pre-verbal, and that Father did not properly facilitate the phone call.

Mother's current counselor, Aaron Brown, a licensed clinical social worker with Hiwassee Mental Health Center, testified about Mother's recent treatment and progress. According to Mr. Brown, Mother has passed all administered hair follicle and urine drug screens since she entered treatment and for several months before. Mr. Brown further testified that Mother has implemented strategies to prevent drug abuse relapse, including continued treatment and removal from unhealthy relationships. Mr. Brown testified that because Mother believed that her drug use was tied to over-work at her factory job, after her June/July 2014 relapse, Mother decided not to return to work. According to Mr. Brown, he and Mother decided that it would be better for Mother not to be employed because Mother earning income could lead to her buying drugs. Mr. Brown testified, however, that Mother had recently decided to work part-time in a retail setting. Mr. Brown admitted on cross-examination, however, that he does not administer drug screens to Mother and the only evidence he has of her allegedly clean drug screens since July 2014 is Mother's statements. Mr. Brown testified that he should have been informed by Mother's probation officer if she had failed any drug screens.

Mother's current probation officer, Jim Creech, also testified. Mr. Creech testified that in his time with Mother since October 2014, he has administered two urinalysis drug screens to Mother, both of which showed no drug use in the prior four days. Mr. Creech testified that he had not administered any hair follicle drug screenings to Mother. Mr. Creech also testified that there was a period in February and March 2015 in which

Mother failed to meet with him and did not attend drug counseling. Mother informed Mr. Creech that she did not like to meet at the county courthouse because Father and Step-mother both worked there and that she could not attend drug counseling due to insurance issues. After the meetings were moved to another location, Mother attended all required meetings. Mr. Creech testified that Mother is behind in paying the court costs and fees required by her probation, but that it was difficult to discern whether these issues would lead to a future violation of probation.

Mother's current husband also testified. Mother and Husband married in 2014. Husbband admitted that he was convicted in 2008 of conspiracy to distribute and possess 500 grams or more of methamphetamines. Husband was sentenced to nine years in federal prison, with part to be served in rehabilitation and on probation. The sentence was later reduced to 87 months (a little over seven years). At the time of trial, Husband was serving his sentence on probation, but testified without dispute that his probation may terminate early. Husband admitted his involvement in the crime and that he had used methamphetamines. Husband testified, however, that he had never used methamphetamines with Mother and that he is regularly drug screened due to his probation.

Husband further testified that Mother is capable of working. According to Mother, however, she has been unable to find work due to her felony record. Documents included in the record show that Mother joined a staffing agency in an effort to find work. Mother testified that all of her expenses are paid by Husband, who has gainful employment, or other family members. In addition, Mother testified that her car is owned by Husband and that Husband and her father paid for her various attorneys in her criminal and unrelated family law case.[6] Mother also testified that she declined to apply for any government assistance because all of her needs were being met by others, including hair appointments and cigarettes.

Father testified that Mother has had no visitation with this child since October 2013 when visitation was terminated by Family Court Services. Father admitted that Mother texted him to ask for visitation in February and May 2014, but that he indicated that he would only allow supervised visitation at the visitation center because of the divorce court order. Father testified that throughout their estrangement, Mother had never offered any support or gifts for the child, which Mother denied. Father admitted that during the parties' divorce, he asked Mother not to text him anymore because of threatening messages that she was sending. Father even went so far as to file a police report regarding the threats. Father testified, however, that Mother continued to text him and that he continued to see her at the supervised visitations until those eventually terminated.

---

[6] Mother has an older child. The older child's father is the primary residential parent of the child, but Mother has some visitation.

Father and Step-mother both testified as to their stable home life and the care they provide the child. Step-mother testified that she has a loving and close bond with the child and that the child knows her as her mother. Step-mother also testified that the child has a close bond with Step-mother's extended family.

At the conclusion of trial, the trial court took the matter under advisement and issued a written order on September 29, 2015. In its order, the trial court ruled that Petitioners failed to prove abandonment by willful failure to support, but concluded that "there is clear and convincing evidence of grounds to terminate Mother's parental rights" for willful failure to visit and wanton disregard. The trial court further ruled that termination was in the child's best interest. Thereafter, Mother filed a timely notice of appeal to this Court.

## Issues Presented

Mother presents the following issues on appeal, as we have restated them:

> 1. Whether the trial court erred in finding, by clear and convincing evidence, the existence of grounds for terminating Mother's parental rights.
> 2. Whether the trial court erred in finding, by clear and convincing evidence, that termination of Mother's parental rights would be in the child's best interest.

## Discussion

As recently explained by the Tennessee Supreme Court:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious

harm to a child." ***Hawk***, 855 S.W.2d at 580 (quoting ***In re Hamilton***, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also **Santosky v. Kramer***, 455 U.S. 745, 747 (1982); ***In re Angela E.***, 303 S.W.3d at 250.

***Carrington***, 2016 WL 819593, at *10 (footnote omitted).

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." ***In re Jacobe M.J.***, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. ***Santosky***, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); ***In re Valentine***, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." ***Id***. at 653.

"The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review *de novo* with no presumption of correctness." ***Carrington***, 2016 WL 819593, at *12 (citing ***In re M.L.P.***, 281 S.W.3d 387, 393 (Tenn. 2009)). In addition, "all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness." ***Carrington***, 2016 WL 819593, at *12 (citing ***In re Angela E.***, 303 S.W.3d at 246).

When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See **McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of

fact, and the credibility accorded will be given great weight by the appellate court. ***Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

A party seeking termination of parental rights must prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c). First, the party must prove one of the statutory grounds for termination enumerated in Tennessee Code Annotated Section 36-1-113(g). ***Id.***; ***In re F.R.R., III***, 193 S.W.3d 528, 530 (Tenn. 2006). Second, the party must show that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002). Consequently, we begin with the grounds for termination.

**I.**

The first issue raised in this case concerns what grounds for termination were appropriately raised by the petition and tried by the parties. The termination petition in this case contained the following allegations with regard to grounds:

> 15. Petitioners would assert as grounds for termination of [Mother's] parental rights that the [Mother] has not seen or visited with the child for at least four (4) months prior to the filing of this petition; and therefore, for purposes of this petition for adoption has abandoned the child as defined in T.C.A. §36-1-102(5)(g)(1).
> 16. Pursuant to T.C.A. §36-1-113(9)(A)(iii) that [Mother] has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation as defined in T.C.A. §36-1-102(1)(C);
> 17. Pursuant to T.C.A. § 36-1-113(9)(A)(iv) that [Mother] has failed to manifest an ability and willingness to assume legal and physical custody of the child and for purposes of this adoption she has abandoned the minor child.

The trial court noted in its final order that this petition was "inartfully" drafted. We must agree. Indeed, Tennessee Code Annotated Sections 36-1-102(5)(g)(1)[7] and 36-1-113(9)(A)(iii),(iv)[8] simply do not exist. Only the reference to Tennessee Code Annotated Sections 36-1-102(1)(C) properly references the statute.

---

[7] We assume that Petitioners are referring to Tennessee Code Annotated Sections 36-1-113(g)(1), which indicates that abandonment is a ground for termination.

[8] Again, we assume that Petitioners are referring to Tennessee Code Annotated Sections 36-1-113(g)(9)(A)(iii),(iv). We note, however, that the grounds under Section 113(g)(9)(a) cannot be applied to legal parents. Under Tennessee Code Annotated Section 36-1-102(28)(A), however, a "legal parent" is defined as: "The biological mother of a child[.]" Because there is no dispute that Mother is the biological

In light of the confusion engendered by the petition, the trial court entered an order on June 2, 2015, providing that "the grounds to be proved in this matter are failure to pay support and failure to visit." Respectfully, the trial court's order does little to stymy the confusion in this case. Although the trial court fails to reference any code sections in its order, the trial court clearly references the ground of abandonment contained in Tennessee Code Annotated Section 36-1-113(g)(1). Abandonment, however, involves several definitions, two of which could be applicable in this case:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . .

> * * *

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; . . . .

Tenn. Code Ann. § 36-1-102(1)(A); *see also **In Re Jayden B.T.***, No. E2014-00715-COA-R3-PT, 2015 WL 3876573, at *9 (Tenn. Ct. App. June 23, 2015), *perm. app. denied* (Tenn. Sept. 25, 2015) (noting that the "statutory definition of abandonment contains several distinct grounds"). Because there is no dispute that Mother was incarcerated at the time of the filing of the termination petition, either the definition contained in Section 102(1)(A)(i) or (iv) could apply in this case. As noted above,

---

mother of the child, she is a legal parent for purposes of termination of her parental rights and Section 113(g)(9)(a) cannot apply to her.

however, Sections 102(1)(A)(i) and (iv) contain different four months periods for determining the parent's failure to visit. The termination petition in this case only references the "four (4) months prior to the filing of this petition," leading this Court to conclude that Section 102(1)(A)(i) is the only ground pled in the termination petition. Despite this fact, in its final order, the trial court references the "four (4) consecutive months immediately preceding the filing of the termination proceeding," but ultimately concludes that the appropriate period is the four months preceding Mother's incarceration.

A trial court cannot terminate parental rights based on a ground that is not alleged in the complaint. *See M.D. v. R.L.H.*, No. E2005-00324-COA-R3-PT, 2005 WL 3115874, at *3 (Tenn. Ct. App. Nov.22, 2005). Nevertheless, a ground for termination not included in the petition properly can be found if the ground was tried by implied consent. *In re: Anthony R.*, No. M2012-01412-COA-R3-PT, 2013 WL 500829, at *4 n.5 (Tenn. Ct. App. Feb.8, 2013). Here, the parties discussed at length Mother's visitation or lack thereof in the trial court for the four months prior to Mother's July 2014 incarceration. Neither party objected to this evidence. Furthermore, in her appellate brief, Mother focuses only on the four month period preceding her incarceration. Under these unique circumstances, we will consider whether Mother willfully failed to visit in the four months prior to her incarceration under Tennessee Code Annotated Section 36-1-102((1)(A)(iv).

This decision does not end our inquiry into the appropriate grounds to be considered in this appeal, however. As previously discussed, in addition to abandonment by an incarcerated parent for willful failure to visit, the trial court also found abandonment by an incarcerated parent through wanton disregard, also under Tennessee Code Annotated Section 36-1-102((1)(A)(iv). Mother argues that the trial court was not entitled to terminate her parental rights on this ground because the termination petition did not sufficiently allege this ground, it was not referenced in the trial court's June 2, 2015 order, and it was not tried by implied consent. We agree. First, we note that while the termination petition did indicate that Mother's "continued drug use and criminal activity reflect her disregard for the child," the trial court's June 3, 2015 order specifically limited the termination grounds to abandonment by willful failure to visit or support. Additionally, when the guardian ad litem indicated his belief that "[o]ne of the grounds is . . . wanton disregard," counsel for Mother objected based upon the trial court's prior order. The trial court sustained the objection and no other mention of wanton disregard is contained in the trial transcript. Under these circumstances, we conclude it would be inappropriate to include the ground of wanton disregard where the trial court did not include such a ground in its order determining the grounds and where the ground was not tried by implied consent. *See In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *10 (Tenn. Ct. App. Apr. 29, 2005) (holding that to consider a ground not pleaded or tried by consent "would place the parent at a disadvantage in preparing a defense") (citing *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn.

Ct. App. 2004) (holding that because of the fundamental nature of parental rights, courts must take a very strict view of procedural omissions that could put a parent at a disadvantage in preparing for trial)). As such, we reverse the trial court's finding that the ground of wanton disregard was proven against Mother. The only ground for termination of Mother's parental rights properly before this Court is, therefore, abandonment by an incarcerated parent through willful failure to visit pursuant to Tennessee Code Annotated Section 36-1-102(a)(1)(iv).

## II.

In order to establish abandonment by an incarcerated parent through willful failure to visit, Petitioners must prove that: (1) Mother was "incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding"; (2) Mother failed to visit the child in the "four (4) consecutive months immediately preceding such parent's or guardian's incarceration"; and (3) such failure to visit was willful. *See* Tenn. Code Ann. 36-1-102((1)(A)(iv).

This Court explained the General Assembly's decision to provide additional grounds for termination applicable only to incarcerated parents in *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005). As the *Audrey* Court explained:

> The General Assembly's decision to provide . . . additional tests for abandonment for incarcerated or recently incarcerated parents reflects, in part, the difficulties inherent in proving that a parent has willfully failed to visit or support a child for four consecutive months when the parent was incarcerated during all or part of that time. Incarceration necessarily restricts a prisoner's freedom of movement, and many prisoners have no resources with which to continue paying child support once their crimes and resulting imprisonment have forced them to forfeit their regular jobs. Thus, the parent's incarceration provides a ready-made excuse for his or her failure to visit or support the child during the four-month period made relevant by the first statutory definition of abandonment. However, the strong public interest in providing procedures for terminating the parental rights of unfit parents does not dissipate simply because a parent's irresponsible conduct has reached the level of criminal behavior and incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s first test for abandonment prevents a parent from relying on his or her own criminal behavior and

resulting imprisonment as a defense to the termination of his or her parental rights by allowing the court to examine the record of visitation and support during the most recent four-month period for which the excuse of incarceration is unavailable.

*Audrey*, 182 S.W.3d at 865−66 (footnotes omitted) (going on to also consider the policy behind the ground of wanton disregard).

Here, there is no dispute that Mother was incarcerated when the termination petition was filed. Furthermore, there is no dispute that Mother had no visitation with the child in the four consecutive months prior to her incarceration, March 11, 2014 through July 10, 2014. Mother argues, however, that her failure to visit was not willful because her efforts were frustrated by Father. As we explained in *Audrey*:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i[v]) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . .

. . . .Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *In re Mazzeo*, 131 F.3d 295, 299 (2d Cir.1997); United States v. Phillips, 19 F.3d 1565, 1576 (11th Cir.1994); *In re Adoption of Earhart*, 117 Ohio App. 73, 190 N.E.2d 468, 470 (1961); *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89, 97 (1979). Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re M.J.B.*, 140 S.W.3d at 654; . . . . Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946, 950 (1997), or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child, *In re Serre*, 77 Ohio Misc.2d 29, 665 N.E.2d 1185, 1189 (1996); *Panter v. Ash*, 177 Or.App. 589, 33 P.3d 1028, 1031 (2001). . . . .

- 15 -

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. *In re Adoption of S.M.F.*, No. M2004-00876-COA-R9-PT, 2004 WL 2804892, at \*8 (Tenn. Ct. App. Dec.6, 2004) (No Tenn. R. App. P. 11 application filed). Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *See Johnson City v. Wolfe*, 103 Tenn. 277, 282, 52 S.W. 991, 992 (1899); *Absar v. Jones*, 833 S.W.2d 86, 89–90 (Tenn. Ct. App. 1992); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983); *see also In re K.L.C.*, 9 S.W.3d 768, 773 (Mo. Ct. App. 2000).

*Audrey*, 182 S.W.3d at 863–64.

In her brief, Mother asserts that Father's actions and her own indigence prevented her from having visitation with the child. The trial court made the following findings on this issue:

> The courts have previously held that even though a parent has certain prerequisites in order to obtain co-parenting time such as alcohol and drug testing, when a parent refuses to take that action then the failure to visit is willful. . . . Mother has known since before October 2013 of her need to pass drug tests and get treatment in order to have unsupervised co-parenting time. The court is troubled by the fact that Family Court Services failed to continue to supervise the co-parenting time without court approval. However, Mother did not come back to court to request a change of supervisors. The court here is also mindful of *In Re: Joseph D.N*[.], 2010 Tenn.App. Lexis 164 (Tenn. Ct. App., March 3, 2010) where the courts have held that failure to sue to enforce visitation is not grounds for termination.
>
> \* \* \*
>
> [Mother] testified she did not have the money to enforce visitation and felt that it would be fruitless since she knew she could not pass a drug test. She testified she requested co-parenting time or visitation in February before the statutory period for termination and again during the statutory period in terminations cases . . . . These were admitted by Father. . . . Mother testified that since she was unable to pass drug tests, she was not to get co-parenting time.

- 16 -

. . . . Per the divorce decree, Mother was allowed co-parenting time daily as long as she paid for the supervision at the Visiting Center. Once Mother passed a hair follicle drug test that indicated that she was drug free for ninety days, her father could provide the supervision. Once she passed a subsequent drug screen that indicated an additional ninety (90) days of being drug fee, she could have unsupervised co-parenting time. Mother did not pass the initial ninety day drug screen and within days of having the court hearing in August of 2013 and the court Order going down in October of 2013, Mother was arrested for theft. When Family Court Services then refused to supervise her co-parenting time, she did not file anything to ask the court to change this now impossible schedule. She objected to the limitation. She testified she lacked the funds to file something in court to change this Order. She testified she was further told she could not visit the child. [Mother] testified she was not working in 2014. She was found to be indigent in Criminal Court in 2013 and 2014.

Father has given some conflicting statements. . . . Father [] testified he did not block his phone number but admitted he did text Mother and told her never to text him again. On the other hand, Mother was given several chances during the divorce case to get clean drug screens, to go to parenting class, and pay child support. At first, Father was ordered to pay for the drug test, and he was very unhappy about this. . . .

This is a very sad case of addiction whereby Mother of a newborn child has been unable to become drug free until her incarceration some eighteen months after the birth of her child. Father was in a new relationship at the time of the divorce and subsequent to that time he had had no incentive to help Mother become drug free and was under no legal obligation to do so. He is of the opinion that it is not in the best interest of the child to have any kind of relationship with her Mother. Mother's conduct of failing a drug screen while out on probation is wanton disregard for the welfare of the child prior to her incarceration. She has been given many opportunities to rehabilitate herself and because of all of the above, the court finds that there is clear and convincing evidence of grounds to terminate Mother's parental rights. She did not manifest an ability and willingness to assume physical and legal custody of the child. She did not visit the child. In addition, the court finds it is in the best interest of

the child to be adopted. The child at this time is in a home that is stable with two parents who are asking for the unfettered right to care for her. There is no proof in the file that that Petitioners are anything but good parents and have taken care of this child since a time close to the birth of the child.

A thorough review of the trial court's order reveals that while the trial court did find that Mother did not visit the child, there is simply no finding that Mother's failure to do so was willful. Indeed, although the trial court makes several references to Mother's argument that her failure to support was not willful, the trial court failed to actually rule upon this issue in its final order. As we recently noted, however:

> The Supreme Court has explicitly held that "the trial court is the proper court to make a determination of willfulness." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (emphasis added); *see also In re Angela T.*, No. W2011-01588-COA-R3-PT, 2012 WL 586864 at *5 (Tenn. Ct. App. W.S., filed Feb. 23, 2012), *rev'd in part on other grounds*; *In re Adoption of Angela E.*, 402 S.W.3d 636 ("Because testimony may be critical to the determination of whether a parent's conduct was willful, trial courts are the proper courts to make a determination of willfulness").

*In re K.M.K.*, No. E2014-00471-COA-R3-PT, 2015 WL 866730, at *4 (Tenn. Ct. App. Feb. 27, 2015). In *K.M.K.*, this Court held that the trial court's determination that father failed to pay support during the relevant period was "insufficient" where the trial court made no explicit finding that such failure was willful. *Id.* As such, the *K.M.K.* Court indicated that the "normal[]" course of action was to remand "with directions to the trial court to address the issue of 'willfulness,'" unless other grounds were present to support termination. *Id.* at *5. Because no other grounds were found by the trial court and sustained by this Court, we must remand to the trial court in order for the trial court to address the question of whether Mother's failure to visit was willful.

This Court will only consider the child's best interest where at least one ground for termination has been established. *See State Dep't of Children's Servs. v. D.W.J.*, No. E2004-02586-COA-R3-PT, 2005 WL 1528367, at *5 (Tenn. Ct. App. June 29, 2005) ("Based upon our holding that none of the grounds for termination of Mother's parental rights were proven by DCS, we need not address whether there was sufficient proof regarding whether the termination was in the best interest of the children[.]"); *State v. C.H.K.*, 154 S.W.3d 586, 593 (Tenn. Ct. App. 2004) (noting that it would be "premature" to consider the child's best interest absent the establishment of grounds). Because we are

vacating and remanding as to the single ground remaining, we do not proceed to consider whether the child's best interest is served by the termination of Mother's parental rights.

**Conclusion**

The judgment of the Chancery Court of McMinn County is reversed in part and vacated in part. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are assessed to Appellees Randall P. and Jamie P., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE