Argued and submitted June 18, reversed and remanded September 23, 2009

In the Matter of the Marriage of

Ryan G. HERINCKX,
*Petitioner-Appellant,*
*and*

Michelle H. MATEJSEK,
*Respondent-Respondent.*

Klamath County Circuit Court
0304354CV; A137564

218 P3d 137

George W. Kelly argued the cause and filed the brief for appellant.

Craig M. Cowley argued the cause for respondent. With him on the brief was Gevurtz Menashe Larson & Howe PC.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

In this domestic relations case, father appeals from a judgment that allows mother to relocate to Chicago with the parties' child. We review the record[1] *de novo*, ORS 19.415(3);[2] ORS 107.405; ORS 109.103(1), but give weight to the demeanor-based credibility findings of the trial court. *Fedorov and Fedorov*, 228 Or App 50, 64, 206 P3d 1124 (2009). For the reasons set forth below, we reverse and remand.

Father and mother have one child, who was born in October 2000. At that time, mother and father lived together in Klamath Falls. About seven or eight months after the child was born, father and mother ended their relationship. After that, the child lived with mother and had frequent parenting time with father. Eventually the parties entered into a parenting plan that provided that mother would have custody of the child and that father would have parenting time three nights per week and additional parenting time every sixth weekend. Under that schedule, father calculated that the child was with him 45 percent of the time.

Over time, both parties entered into other romantic relationships. Father married in 2002, when the child was one and one-half years old, and, around that same time, mother began living with Taylor, to whom she was engaged at the time of trial in August 2007. The child has good relationships with father's wife and with Taylor.

---

[1] The designation of record in father's notice of appeal was to "the court file and record of all hearings." In this case, in context, we understand father to have intended to designate the exhibits offered during the hearings.

We remind appellate practitioners, however, that exhibits should be specifically included in the designation of record. *See, e.g.*, ORAP 2.05(6) (stating that a notice of appeal must contain "[a] designation of those parts of the proceedings to be transcribed and exhibits to be included in the record in addition to the trial court file") (footnotes omitted); ORAP Appendix 2.05 (providing illustration of a notice of appeal); *see also* ORS 19.365(2) (providing in part that "[t]he record on appeal shall consist of those parts of the trial court file, exhibits and record of oral proceedings in the trial court that are designated under ORS 19.250"); ORS 19.250(1)(d) (requiring, in part, that a notice of appeal contain "[a] designation of those portions of the proceedings and exhibits to be included in the record in addition to the trial court file"); ORS 19.005 (defining "exhibits" and "record").

[2] The 2009 Legislative Assembly amended ORS 19.415. SB 262 (2009). Because the notice of appeal in this case was filed before the effective date of those amendments, they do not affect our analysis.

In the spring of 2006, father informed mother that he and his wife were going to move to Roseburg, where his wife's family lives. As a result of that move, the child's parenting time with father decreased to about 27 percent of the time.

A few months after mother learned about father's intended move, Taylor was offered a job with the Chicago Fire Department, where he had applied 11 years earlier. Taylor grew up in Chicago and has family there.[3] Taylor was concerned about taking the job (and at first was unsure that the initial offer would result in a permanent position), but mother believed that, because father was already moving to Roseburg and away from the child's home in Klamath Falls, she and Taylor would be free to move as well. In March 2007, after Taylor finished a training period with the fire department, mother notified father that she intended to relocate to Chicago with the child in June 2007.

In mother's view, the child "is so strongly bonded with [Taylor] that it would be devastating for her if we didn't get to move." Once, when mother and the child were returning to Oregon from Chicago, the child cried in earnest because she did not want to go. The child also expressed excitement to her teacher and her cousin about moving to Chicago. Mother testified that, if allowed to move to Chicago with the child, she and Taylor would be able to arrange their work schedules so that the child would not need to go to daycare. Both mother and Taylor testified that, if mother and the child were not able to relocate to Chicago, Taylor would seek a firefighter position in Oregon, but that the process of trying to find one would be long and difficult. Mother expressed the view that, in that event, her relationship with Taylor "[m]ost likely * * * will be done, because he will not be able to pursue a career in Oregon."

A few weeks after mother notified father of her intention to relocate, father moved to change custody and place the child with him. At trial, father withdrew his motion

---

[3] Mother has family in the Klamath Falls area with whom child has emotional ties.

for a change of custody, leaving as the only issue the modification of the parenting plan, which requires a determination regarding whether moving to Chicago is in the child's best interest.

Dr. Knapp, a clinical psychologist, conducted a custody evaluation before father withdrew his motion for a change of custody. He found the child to be well-adjusted but anxious about being in the middle of the custody dispute and worried that she might hurt one of her parents. Knapp concluded that the child could do well with either parent and that she was reluctant to express a preference, but preferred to have mother continue as the custodial parent. Focusing on the custody issue, Knapp thought that the case was the closest that he had seen in 27 years.

Knapp credited mother with trying very hard to assure that the child would have a good relationship with father. Knapp described mother as having been "exemplararily open and cooperative, despite all the objections the father has." Knapp thought—and our review of the record supports the view—that father, on the other hand, had maintained an overly critical view of mother's parenting.[4]

Knapp's evaluation, offered when custody was at issue, recommended that the child move with mother to Chicago and have a total of about two months of visitation with father during winter, spring, and summer breaks. However, focusing solely on the child's best interests, he indicated that he would not recommend a move to Chicago. Knapp explained that he would not want the child to lose parenting time with either party and that spending time with both parents equally was better for her.

---

[4] We note as well that Taylor has, on occasion, engaged in obnoxious, inappropriate behavior toward father. The trial court observed that, at times, Taylor's "courtroom demeanor bordered on arrogance and an attempt to be overbearing. In some respects, his courtroom conduct was similar to the personality reflected in [father's] letters and conduct towards mother. Despite Mr. Taylor and father's shortcomings, both seem to be good individuals who care about [the child's] well-being." Although we do not condone rudeness or disrespect, our review of the record does not suggest that the child's relationships have been affected by the tension between the adults in her life.

Consistently with Knapp's testimony, father believed that, if the child moved to Chicago, their relationship would suffer because of the loss of regular, frequent weekend visits. He also pointed out that, if the child visited for eight weeks during the summer, father and his wife would not be able to take that much time off work and so would have to put her in daycare for a portion of her visit.

In a letter opinion, the trial court concluded that relocation was in the child's best interests. The court cited Knapp's evaluation, including the conclusion that Knapp "supported mother's relocation." The court noted that the child has two families, with strong bonds to father and his wife and to mother and Taylor. The court found:

> "It is in [the child's] best interest that a parenting plan allow for [her], to the extent possible, to maintain her relationship with those adults who are most important in her life. [Mother's] planned relocation to Chicago will allow her and [the child] to continue a familial relationship with * * * Taylor. The move will adversely affect [the] relationship [of father and his wife] with [the child], but it will not destroy it. [Father's] relocation to Roseburg significantly reduced his time with [the child;] however, he continues to have a strong relationship with her. [Mother's] relocation will significantly reduce the frequency of father's time but not the overall percentage. I believe that for the Court to grant father's requested relief and prohibit [mother] from relocating with * * * Taylor, the result will be the termination of their relationship which will adversely affect a significant part of [the child's] life. This would not be in [the child's] best interest."

The court also noted that, if the relocation occurred, the child's time in daycare would be reduced, in keeping with the parties' goals.

Father appeals. He contends that the trial court erred in its findings that Knapp supported mother's relocation, that failing to relocate would cause the termination of mother's relationship with Taylor, and that relocation was in the child's best interests. We conclude on *de novo* review that the record does not establish that relocation is in the child's best interests, and we reverse and remand.

We begin with the standards applicable to the modification of a parenting plan in the context of a parent's relocation. In *Cooksey and Cooksey*, 203 Or App 157, 172, 125 P3d 57 (2005), we reviewed the case law and identified the following principles:

"First, the focus is solely on the best interests of the children. More specifically[,] * * * the focus is on the question whether the children are *'better* served' by relocating. *Meier [and Meier,* 286 Or 437, 447-48, 595 P2d 474 (1979)] (emphasis in original). * * *

"Second, in evaluating the best interests of the children, we examine the factors identified in ORS 107.137(1), along with the legislative directive to promote strong relationships between children and their noncustodial parents. *Cole [v. Wyatt,* 201 Or App 1, 8, 116 P3d 919 (2005)].

"Third, we review the trial court's best interests determinations *de novo.* ORS 19.415(3). There is, to be sure, some very strong phrasing in the cases concerning the 'discretion' of trial courts to make such determinations. *See, e.g., Meier,* 286 Or at 446 (relocation decisions are 'weighted with the presumption that the court has properly exercised its judicial discretion in determining what is for the best interest of the child'); *Willey [and Willey,* 155 Or App 352, 355, 963 P2d 141 (1998)] ('Determining whether to impose a [relocation] restriction is addressed to the sound discretion of the trial court.'). Giving such phrasing literal import, however, cannot be reconciled with the statute that controls our standard of review. Instead, we understand the case law to reflect the well-settled principle that, in reviewing trial court decisions that so often involve considerations of credibility and demeanor, we do so cautiously, reversing only for clearly articulable reasons."

(Final brackets in *Cooksey.) See also Fedorov,* 228 Or App at 63-64 (discussing and applying those principles).

As pertinent here, ORS 107.137(1) provides, in part, that,

"[i]n determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"* * * * *

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

Public policy also favors assuring children "frequent and continuing contact with parents who have shown the ability to act in the best interests of the child." ORS 107.101(1); *see also* ORS 107.149 (same). In determining the child's best interests, we avoid "isolating any one of the relevant factors referred to in [ORS 107.137(1)], or any other relevant factor, and relying on it to the exclusion of other factors." ORS 107.137(2).

Here, it is well established that the child has close emotional ties to mother and father, that each parent loves and has a strong interest in her, and that it is desirable to continue those relationships. The child also has strong emotional ties to father's wife and to Taylor. Although the child has a close relationship to each parent, it appears that mother has been more supportive of the child's relationship with father than father has been of the child's relationship with mother.

Moving the child to Chicago inevitably would detrimentally affect the child's relationships with father's wife, mother's family, and, most significantly, with father, who would lose frequent, regular parenting time, although he would continue to have the same total amount of parenting time. As Knapp noted, the child benefits from spending time with both her parents. Under the circumstances and in light of the statutory policy favoring frequent contact between minor children and their parents, we cannot conclude that the potential loss of the child's relationship with Taylor is so detrimental as to outweigh the inevitable damage to all of the child's other relationships, especially her relationship with

father. In short, we cannot conclude that the child's interests are better served by moving to Chicago than by remaining in Klamath Falls.[5]

We recognize that there is some appearance of unfairness here, given that father was able to freely choose to move to Roseburg, while mother's choices are more constrained. Moreover, we recognize that mother has made a greater effort than has father to support the child's relationship with him. Nevertheless, our conclusion is compelled by the legislature's directive to consider only the child's best interests in determining whether to modify the parenting plan.

Reversed and remanded.

---

[5] To the extent that daycare is at issue, we note that, if the child is with father for eight weeks over the summer break, she would be in daycare for some portion of that time because father and his wife cannot take that entire time as vacation from their jobs.