Argued and submitted April 1, 2022, affirmed March 1, 2023

In the Matter of the Adoption of K. L. V.,
a minor Child.

J. W. V.
and M. A. H. V.,
*Petitioners-Respondents,*

*v.*

J. L. W.,
*Respondent-Appellant.*

Baker County Circuit Court
20AP00910; A177007

525 P3d 1237

Mother appeals from a general judgment of adoption that (1) terminated her parental rights to her daughter, L, (2) left father's parental rights to L intact, and (3) granted parental rights to L's stepmother (father's wife). Mother does not dispute the trial court's decision to proceed with the adoption hearing in the absence of her consent. She challenges instead the court's determination that the adoption was in L's best interests. Mother requested *de novo* review arguing that because petitioners sought to terminate her parental rights as part of the private, stepparent adoption, ORS 19.415 requires appellate review to be *de novo*. *Held*: *De novo* review is required in this private adoption proceeding because the relief sought by father and stepmother cannot be granted without terminating mother's parental rights. It is, in effect, a proceeding for the termination of parental rights. Upon *de novo* review, and deferring to the trial court's express credibility findings, there was clear and convincing evidence that mother deserted and willfully neglected L for one year prior to the filing of the adoption petition, without just and sufficient cause, and further, that the adoption is in L's best interests.

Affirmed.

Matthew B. Shirtcliff, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Scott C. Adams argued the cause and filed the brief for respondents.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

This is a private stepparent adoption[1] in which mother appeals from a general judgment of adoption that (1) terminates her parental rights to her daughter, L, (2) leaves father's parental rights to L intact, and (3) grants parental rights to stepmother pursuant to the petition to adopt that stepmother and father filed under *former* ORS 109.309 (2019), *renumbered as* ORS 109.276 (2021). Mother appeals the trial court's judgment, asserting that the court erred in granting the adoption based on findings that "adoption was in [L's] best interest" and that "mother continues to have a substance abuse problem and is not presently able to provide for [L's] care." We conclude, for reasons we explain below, that our review of the record must be *de novo*. Having reviewed it *de novo*, we conclude that termination of mother's parental rights to L is warranted because she deserted and willfully neglected L for the year preceding the filing of the adoption petition and she did so without just and sufficient cause. We also find that adoption is in L's best interests. The trial court did not err, and we affirm.

## *DE NOVO* REVIEW

ORS 19.415[2] defines the pertinent scope of appellate review:

> "(3)   Upon an appeal in an equitable action or proceeding, review by the Court of Appeals shall be as follows:
>
> "(a)   Upon an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals shall try the cause anew upon the record; and
>
> "(b)   Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding

---

[1]  ORS 109.041(2) provides that a stepparent adoption

"leave[s] unchanged the relationship, rights and obligations between [the] adopted person and descendants of the adopted person and natural parent of the adopted person, who is the spouse of the person who adopted the person, and the descendants and kindred of such natural parent."

[2]  Under ORS 19.415(3) (2005), *amended by* Or Laws 2009, ch 231, § 2, all cases in equity were reviewed *de novo*. ORS 19.415(3) was amended in 2009 to make *de novo* review discretionary in all equitable actions other than for the termination of parental rights, for which review remains mandatory. Or Laws 2009, ch 231, § 2.

> for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."

Mother argues that ORS 19.415(3) requires *de novo* review because the adoption proceeding led to a judgment that necessarily terminated her parental rights. In other words, she argues that this was a proceeding for the termination of parental rights (TPR). Father and stepmother argue that ORS 19.415(3) does not require *de novo* review because an adoption case is not a TPR proceeding. They also argue that an adoption proceeding is not an equitable proceeding and, therefore, that *de novo* review is not permitted even at the court's discretion. We conclude that the statute is clear: *De novo* review is mandatory in an appeal from a judgment in a proceeding for the termination of parental rights. *De novo* review is otherwise discretionary in appeals from judgments in equitable proceedings.

We review the record of the adoption proceeding *de novo* because the court was required to address father and stepmother's request to terminate mother's parental rights as a part of the proceeding. In the absence of termination, the petition for adoption must be denied. *See* ORS 109.430 ("It is the policy of this state that adoption is based upon the legal termination of parental rights and responsibilities of birth parents and the creation of the legal relationship of parents and child between an adoptee and the adoptive parents."). "In an adoption, a court is asked to terminate every right and interest of the natural parent." *Simons et ux v. Smith*, 229 Or 277, 281, 366 P2d 875 (1961).[3] The adoption proceeding was, at least in part, a proceeding for the termination of parental rights. Moreover, once the court concluded that it could proceed in the absence of mother's consent, it was required to determine whether adoption was in L's best interests, a determination that is itself equitable in nature and that we may review *de novo*.[4]

---

[3] Our opinion is limited to the case where, as here, there is a living second parent with legal parental rights, whose rights are necessarily terminated by the adoption, and we express no opinion on other possible circumstances.

[4] *See Sjomeling v. Lasser*, 251 Or App 172, 185-86, 285 P3d 1116, *rev den*, 353 Or 103 (2012) (discussing that historically we applied *de novo* review to

To the extent that father and stepmother argue that ORS 19.415(3)(a) only applies to state-initiated proceedings to terminate parental rights under ORS 419B.498, we find no support for that contention. There is nothing in the text or context of ORS 19.415(3) that so limits the scope of appellate review, and we decline to "insert what has been omitted." ORS 174.010. When ORS 19.415(3) was amended in 2009, then-Chief Judge of the Oregon Court of Appeals, David Brewer, testified regarding the amendments and he did not state or otherwise indicate that the retention of *de novo* review in TPR cases was intended to be limited to cases filed under ORS chapter 419B. He noted simply that termination cases were of "tremendous importance," and he acknowledged the legislature's desire that the court continue to review such cases *de novo*. Audio Recording, Senate Committee on Judiciary, SB 262, Apr 4, 2009, at 1:11:22 (comments of Chief Judge David Brewer), https://sos. oregon.gov/archives/Pages/records/legislative_minutes.aspx (accessed Dec 20, 2022); Audio Recording, House Committee on Judiciary, SB 262, May 12, 2009, at 0:10:23 (comments of Chief Judge David Brewer), https://sos.oregon.gov/archives/ Pages/records/legislative_minutes.aspx (accessed Dec 20, 2022).[5]

Chief Judge Brewer's comments are consistent with Oregon case law, which for decades has acknowledged the essential rights at stake in TPR cases along with the corresponding risk that such rights will be lost, both in the context of private adoptions and state-initiated TPR proceedings. *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 186, 796 P2d 1193 (1990) ("The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants."); *Simons*, 229 Or at 284 ("Adoption, of course, terminates all such rights of the natural parents.

---

equitable cases involving analysis of the best interests of the child); *Herinckx and Matejsek*, 231 Or App 50, 52, 218 P3d 137 (2009) (determination of the best interests of the child in a custody dispute is reviewed *de novo* under ORS 19.415(3) (2005)); *Gastineau v. Harris*, 121 Or App 67, 69, 853 P2d 1338, *rev den*, 317 Or 583 (1993) (determination that father's consent was not required for a private adoption reviewed *de novo* under *former* ORS 19.125(3) (1959), *renumbered as* ORS 19.415(3) (1997)).

[5] The legislative history of SB 262 contains no other discussion regarding the retention of *de novo* review for TPR proceedings.

Both common sense and fundamental due process would suggest that such inchoate rights should not be cut off without a substantial reason."); *Moran v. Weldon*, 184 Or App 269, 275, 57 P3d 898 (2002), *rev den*, 335 Or 195 (2003) ("Termination is the greatest possible deprivation of the fundamental right to be a parent."). In *Zockert v. Fanning*, 310 Or 514, 521, 800 P2d 773 (1990), the Supreme Court held that the right to state-provided counsel exists in private adoption proceedings and state-initiated TPR proceedings alike, precisely because both types of proceedings concern parental rights and the potential loss of those rights:

> "That a person's parental rights are challenged in an ORS chapter 419 proceeding, as opposed to an ORS chapter 109 proceeding, is of no practical consequence to that parent. The challenge is the same in both proceedings—a challenge to presently enjoyed parental rights. ORS 109.430 confirms this similarity by expressly recognizing that 'adoption is based upon the legal termination of parental rights.'"

The retention of *de novo* review in TPR proceedings is based on the importance of the rights at issue, and not the process that is undertaken to terminate them. *De novo* review is required here because this is a proceeding in which the relief father and stepmother seek cannot be granted without terminating mother's parental rights. It is, in effect, a proceeding for the termination of parental rights.

We acknowledge that we have reviewed other private adoption cases without exercising *de novo* review. *T. G. W. v. B. J. V.*, 295 Or App 717, 436 P3d 85 (2019); *T. S. R. v. J. B. C.*, 257 Or App 745, 308 P3d 244 (2013). But neither of those cases contained an in-depth discussion of the applicable standard of review for TPR proceedings. In *T. G. W.*, our opinion does not reflect that any party requested *de novo* review or that there was any disagreement as to the standard of review, stating only that "[w]e review the trial court's legal conclusions for errors of law[.]" *T. G. W.*, 295 Or App at 719. In *T. S. R.*, we discussed the applicable standard of review only in the context of the trial court's decision to allow the father's motion to modify custody, and not as to mother and stepfather's separate petition for adoption and request to proceed without father's consent. *T. S. R.*, 257 Or

App at 754-56. Because neither case addressed the standard of review applicable to TPR proceedings, they do not control here. The issue is squarely before us now and, for the reasons we have already explained, we hold that *de novo* review is required.

## LEGAL FRAMEWORK

A petition for adoption may be granted if

> "the court is satisfied as to the identity and relations of the persons, that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption \* \* \* be effected[.]"

ORS 109.350(1).[6]

There are two stages in an adoption proceeding: "The first stage determines whether the [nonpetitioning] parent's rights may be terminated. The second stage is an independent determination as to whether it is in the best interests of the child to approve the adoption." *Eder v. West*, 312 Or 244, 261, 821 P2d 400 (1991). Mother does not dispute the trial court's decision to proceed to the second stage without her consent. Her challenge is directed solely to the court's determination that the adoption was in L's best interests. But because our review is *de novo*, and because, as we discuss below, the stages have a tendency to overlap, we engage in our own assessment of both stages.

At the first stage, the trial court must determine whether the nonpetitioning parent consents to relinquishing their parental rights and, if that parent does not consent, whether the court may proceed without their consent. *Michels v. Hodges*, 326 Or 538, 544, 956 P2d 184 (1998). Here, father and stepmother argued, and the court concluded, that mother's consent was not necessary because she deserted or willfully neglected L. ORS 109.324 states, in relevant part:

> "(2)   Upon hearing, \* \* \* if the court finds that the parent has willfully deserted the child or neglected without

---

[6] ORS 109.350 was amended in 2021 in ways that do not affect this appeal. We thus cite to the current version of the statute.

just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of the parent at the discretion of the court is not required and, if the court determines that the parent's consent is not required, the court may proceed regardless of the objection of the parent.

"(3)  In determining whether the parent has willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may:

"(a)  Disregard incidental visitations, communications and contributions; and

"(b)  Consider, among other factors the court finds relevant, whether the custodial parent has attempted, without good cause shown, to prevent or to impede contact between the child and the parent whose parental rights would be terminated in an action under this section."[7]

The Oregon Supreme Court has held that "willful neglect" under ORS 109.324 imposes the following standard:

"During the year preceding the filing of the petition for adoption, did the non-consenting parent wilfully fail to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship? All relevant evidence demonstrating the presence or absence of wilful neglect may be considered by the court. The court, however, may disregard incidental visitations, communications, and contributions. ORS 109.324. The ultimate decision must be based on the totality of the evidence. The burden of proof rests upon the petitioner to prove by clear and convincing evidence the statutory grounds for dispensing with consent alleged in the petition."

*Eder*, 312 Or at 266 (footnote omitted). "If [the] court finds that [the nonpetitioning parent] has neglected his or her children, the relevant inquiry shifts to whether just and sufficient cause excuses the parent's neglect." *C. R. H. v. B. F.*, 215 Or App 479, 486, 169 P3d 1286, *rev den*, 343 Or 690 (2007).

---

[7] ORS 109.324 was amended after the petition was filed in ways that do not affect this appeal. We thus cite to the current version of the statute.

The burden of proof that must be met in the first stage of the adoption proceeding, including a finding that desertion or willful neglect without just and sufficient cause occurred, is by clear and convincing evidence. *Zockert*, 310 Or at 528. "In a contested adoption, the requirement that the court find by clear and convincing evidence an express statutory exception to the consent requirement is a matter of extreme importance because, when the adoption is complete, 'every right and interest of the natural parent' in the child is terminated." *Eder*, 312 Or at 260 (quoting *Zockert*, 310 Or at 518).

The second stage of the adoption proceeding occurs only after the nonpetitioning parent consents to relinquishing their parental rights or, as relevant here, upon the court's finding of desertion or willful neglect without just and sufficient cause for the one-year statutory period under ORS 109.324.[8] At that point, the court must decide whether adoption is in the best interests of the child. We note, as a practical matter, that the questions of desertion, willful neglect, and what is in the child's best interests—as well as the evidence that is probative of those questions—may well overlap.[9] For example, "the reasons for terminating parental rights must be related to an objective standard required of all parents rather than to the child-oriented evaluation of competing home environments employed in divorce suits." *Simons*, 229 Or at 285. But once the adoption court finds willful neglect by a parent for the requisite period of time— and, thus, grounds to terminate parental rights—it moves on to stage two when it takes up the best interests of the child analysis which is similar to that used in custody proceedings. *Panter v. Ash*, 177 Or App 589, 595, 33 P3d 1028 (2001). The focus shifts from the nonpetitioning parent who denies the charge of neglect to the child who "ordinarily [has] no vital interest" that would require "termination of

---

[8] There are other statutory exceptions to consent that are not relevant to this proceeding. *See* ORS 109.322 - 109.323.

[9] Once it is established that a parent deserted or neglected a child for one year immediately preceding the filing of the adoption petition and the court decides to proceed without that parent's consent, many of the same facts considered in the first phase are also pertinent to the question of whether adoption is in the child's best interests and, thus, a fit and proper remedy. *See Wilcox v. Alexander et ux*, 220 Or 509, 516, 349 P2d 862 (1960).

his parents' rights," *Simons*, 229 Or at 281, but in whose best interests the court must act.

We acknowledge mother's objection to the court's best-interests findings as relying "heavily on its application of the ORS 107.137 factors."[10] But the question of what is in the child's best interests is relevant to both custody and adoption decisions and the fact that the court considered some of the factors listed in ORS 107.137, in addition to others, in its best-interests analysis here was not error.

## FACTS AND PROCEDURAL HISTORY

We state the pertinent historical and procedural facts in accordance with the *de novo* standard of review, deferring to the trial court's credibility findings. *See Eder*, 312 Or at 266 n 25 ("On *de novo* review, we give due consideration to the findings of the trial judge."); *State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 680-81, 813 P2d 58 (1991) ("Although our review is *de novo*, we give weight to the court's credibility findings.").

L was born in October 2016. For the first year and a half of her life, she resided with her mother, mother's other children, and mother's partner, Myers, who had mistakenly acknowledged paternity of L and was, thus, identified as L's father on L's birth certificate. In early 2018, due to concerns about mother's substance use and related issues that placed her children at imminent risk of harm, the

_____

[10] ORS 107.137(1) states, in relevant part:

"In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. However, the court may not consider such willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in a pattern of behavior of abuse against the parent or a child and that a continuing relationship with the other parent will endanger the health or safety of either parent or the child."

Department of Human Services (DHS) removed L and her siblings from mother's home and placed them in foster care. In November 2018, father filed a petition to establish paternity of L. In February 2019, father's paternity was established, and L was placed in father's custody the next month. Father was in a committed relationship with stepmother and the two lived together; they married in 2020. L has been in father and stepmother's care continuously since March 2019.

Father was awarded legal and physical custody of L in March 2019 with mother's agreement, subject to supervised parenting time with mother. Mother's parenting time was subject to a number of conditions, including that if father suspected substance use on the part of mother, he was permitted to suspend mother's parenting time until she provided a clean urinalysis (UA) report. If mother refused to submit to a UA or if her urine tested positive, all further parenting time would be canceled until mother provided three consecutive clean UAs, each a week apart.

Mother had some parenting time with L at first, but on April 16, 2019, father suspected that she was under the influence of drugs while she was with L, and he suspended her parenting time and required mother to provide the necessary UA documentation. Mother texted father on April 18, 2019, reporting that her UA came back positive, but that she did not know why, asserting that the only things she had taken were cold medicine and allergy pills. She later texted that she had sent the results of clean UAs to father, but father testified that he did not receive that documentation. The record does not contain any documents confirming the transmission of clean UAs to father, nor does it contain documents or other evidence establishing that mother had clean UAs then or at any other time. Parenting time did not resume. Mother last saw L in July 2019 when mother was attending a Fourth of July parade and noticed that L was there with father and stepmother. Mother ran toward L and attempted to interact with her, but because mother had not yet supplied evidence of clean UAs, father intervened and placed L in the car. The last text mother sent to father asking to see L was on July 15, 2019.

Stepmother's family of origin lived, for the most part, in Baker City. Father found a new job in Baker City and because of that, in the fall of 2019, moved his family from the Willamette Valley to eastern Oregon. Father sent notice of his new job and his intent to move, including his new address, to what he believed was mother's then-current address, though he mistakenly sent it to her mother's address. He provided his forwarding address to the post office and the court. He also remained in contact with the parents or guardians of L's maternal siblings as well as the DHS caseworker who was involved with mother concerning one or more of her other children. He received no further communications from mother.

On July 29, 2020, father and stepmother filed their petition to adopt L, along with the required motion and order to show cause why an order should not be entered dispensing with mother's consent to the adoption. Mother filed an objection to the adoption proceeding without her consent and the trial court held a hearing regarding that objection. On April 16, 2021, the court issued its letter opinion concluding that, during the one year period prior to the filing of the adoption petition, mother had deserted and willfully neglected L without just and sufficient cause and indicating that it would proceed without mother's consent. The order overruling mother's objection was entered on May 7, 2021. The court proceeded with a hearing regarding whether adoption was in L's best interests, and on August 31, 2021, it entered a general judgment of adoption, terminating mother's parental rights and concluding that it was in L's best interests that the adoption be granted.

## ANALYSIS

We reviewed the entire record and, having done so, find that there is clear and convincing evidence that mother deserted and willfully neglected L for the requisite period of time, without just and sufficient cause. Mother did not visit or otherwise maintain contact with L for over a year. She did not send L any letters or notes. There was no birthday card or gift—in fact, no cards or gifts of any kind. Mother did not attempt to contact father during the relevant timeframe and, while she could have completed the UA requirements

and resumed parenting time with L under the terms of the custody judgment, she did not do so. We acknowledge mother's testimony that she tried to reach father and that she sent him UA documentation, but even when reviewing the record *de novo,* we must defer to the trial court's credibility findings, including its finding that mother's testimony about her attempts to contact father and sending him UA documentation was not credible. We, thus, resolve that discrepancy against mother and in favor of father.

There is likewise no evidence, even after mother learned where father and L were living and that an adoption case had been filed, that she tried to contact father or L or that she sent father the necessary UA documentation. Mother did provide child support payments, but those payments were sporadic, garnished, and involuntary. As such, the payments were incidental, and they do not demonstrate a substantial expression of concern. *Panter*, 177 Or App at 593 (concluding that father's garnished wages and tax refunds were incidental in light of his failure to maintain contact with his child and, thus, were not enough to establish his concern for the child). Mother's willful neglect and desertion of L for one year was sufficient to authorize the trial court to proceed to adoption without her consent.

Father and stepmother are appropriate caretakers for L and mother does not argue otherwise. They have the resources and desire to care for L, and L is bonded to them, her half-brother, and the rest of the extended family. At the time of the best-interests hearing, father and stepmother had been L's only caretakers for nearly two and one-half years—half of L's life. L had not lived with mother in over three years. Although there was evidence that L had good visits with mother when they happened, they were a distant memory at the time of the best-interests hearing, particularly considering L's young age.

We do not agree with mother that L would not benefit from the termination of her legal relationship with her mother. Termination of mother's parental rights is a condition precedent to allowing the adoption. And that is important because the establishment of a parent/child relationship between stepmother and L will allow stepmother to step in

and act protectively for L when that is necessary, and father is not immediately available to do so himself. Also, L's life—as she knows it—would be completely derailed if her father were to fall sick, get injured, or die. Given mother's desertion and neglect of L, stepmother's adoption of L ensures safety and stability for L when father is absent. Although terminating mother's parental rights will sever the legal relationship between L and her maternal relatives, including her grandmother and half-siblings, we conclude that, on balance, it is in L's best interests to terminate her legal relationship with mother and to permit the adoption to proceed. It is fit and proper that the stepparent adoption be granted. The trial court did not err.

Affirmed.